STATE OF HAWAII, Plaintiff-Appellee, *v.* DONDI K. KAIU, Defendant-Appellant

NO. 8724

(CRIMINAL NO. 55382)

DECEMBER 3, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Dondi K. Kaiu (Kaiu), who was indicted for attempted rape in the first degree, appeals from his conviction of the lesser included offense of sexual abuse in the first degree, a violation of Hawaii Revised Statutes § 707-736(1)(a) (1976). Kaiu argues that the lower court "abused its discretion in denying [his] motions for dismissal and mistrial[.]" His motions alleged that the prosecution had violated its duty to disclose information and material. We affirm.

The pertinent facts are as follows: On May 25, 1981 Kaiu filed and served on the prosecution a request for information, which in relevant part requested:

(i) The names and last known addresses of persons whom the prosecutor intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or

recorded statements but not those statements recorded by the prosecutor;

* * * * *

(ii) Any and all material or information which tends to negate the guilt of the defendant as to the above-captioned charge(s) or to reduce his/her punishment therefor.

On August 28, 1981 Kaiu filed a notice of his intention to rely on the defense of alibi. The prosecution responded that the offense occurred between 7:15 and 8:15 a.m. on November 26, 1980 near the Makaha Bridge in Makaha, Hawaii.

The five-day jury trial commenced on March 8, 1982. The prosecution concluded its case-in-chief on the afternoon of the fourth day of trial. Defense counsel never gave an opening statement to the jury in this case. Kaiu testified on the last day of trial and testified that he was at work in Honolulu on the day and at the time in question. In a pretrial pictorial line-up and at trial, the victim, who had ample opportunity to observe her attacker in the morning light, positively identified Kaiu as being her attacker.

Kaiu alleges three separate instances of nondisclosure.

I.

VICTIM'S FIRST WRITTEN REPORT

The victim made a written report of the incident approximately one-half hour after its occurrence on the morning of November 26, 1980. There was conflicting testimony regarding this report. Mark Angut, the police officer who initially received it, testified that the victim signed the report and that it was legible. The victim and Kenneth Chang, the police detective who threw the report away, testified that it was unsigned by the victim and incomplete. Approximately three hours and twenty minutes after the incident occurred, the victim made a second written report. Defense counsel was given a copy of the second report only.

It was not until his cross-examination of Officer Angut on the second day of trial that defense counsel learned of the victim's first

 

statement. Officer Angut was the second witness who testified in the case.

## II.

### OFFICER DUARTE'S FIRST WRITTEN REPORT

Police Officer Duarte testified that he wrote a report on or around December 14, 1980. He was subsequently advised by Detective Chang that his report had not been received. Thereafter, Officer Duarte wrote out a second report, relying on a copy of the December 14 report that he had kept for his own reference. He then destroyed the copy. The second report was dated January 6, 1981. Officer Duarte testified that, except for the dates, the two reports were identical. Defense counsel was given a copy of the second report only.

Defense counsel did not learn of Duarte's first report until the morning of the third day of trial after six of the prosecution's eight witnesses had testified.

## III.

### PORTIONS OF DETECTIVE CHANG'S REPORT

Although the copy of Detective Chang's written report in the prosecutor's possession included a summary of statements made by the man whose assistance the victim sought and received when she ran away from her alleged assailant, a copy of that summary was not given to defense counsel in response to his written request.

The same is true of that portion of Detective Chang's written report that referred to a composite drawing made by a police artist upon consultation with the victim.

It was not until the second day of trial after six prosecution witnesses had testified that defense counsel learned of the existence of the missing portions of Detective Chang's report. Thereafter, he was given a copy of them. The record does not reveal why he had not been given those portions earlier.

IV.

## PROSECUTION'S VIOLATION OF RULE 16, HAWAII RULES OF PENAL PROCEDURE

Rules 16(b)(1)(i) and 16(e)(8), Hawaii Rules of Penal Procedure (HRPP), provide in relevant part:

Rule 16. Discovery.

\* \* \* \* \*

(b)  Disclosure by the Prosecution.

(1)  Disclosure Upon Written Request of Matters Within Prosecution's Possession. Upon written request of defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:

(i)  the names and last known addresses of persons whom the prosecutor intends to call as witnesses, in the presentation of the evidence in chief, together with their relevant written or recorded statements, provided that statements recorded by the prosecutor shall not be subject to disclosure;

\* \* \* \* \*

(e)  Regulation of Discovery.

\* \* \* \* \*

(8)  Sanctions.

(i)  If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

In our view, when the prosecution is alleged to have violated its duty to disclose material and information under Rule 16, HRPP, the trial court should:

1.  Determine whether or not the prosecution has violated its duty. If the answer is yes, then the trial court should:

2.  Determine whether or not defendant has proved that the prosecution violated its duty maliciously, egregiously, or in bad faith. If the answer is yes, then the trial court should:

 

3. Select appropriate methods to sanction the prosecution.

4. If the answer to item 1 is yes and a mistrial or dismissal of the prosecution's case has not been granted under items 2 and 3, then the trial court should determine whether or not the defendant has been prejudiced by the violation. If the answer is yes, then the trial court should:

5. Define the prejudice; and

6. Determine whether or not the prejudice can be cured by measures less severe than (a) dismissal or (b) mistrial. If the answers are yes, then the trial court should:

7. Select and implement appropriate measures to cure the prejudice; and

8. Determine whether or not the prejudice has been cured. If the answer is no, the trial court should start again from item 6.

In our view, items 1, 2, 4, 5, 6 and 8 above involve findings of fact and/or conclusions of law. Items 3 and 7 involve the exercise of discretion. *See State v. Miller,* 67 Haw. 121, 680 P.2d 251 (1984).

With respect to item 1, the prosecution argues that the events noted in sections I and II above do not constitute violations of Rule 16(b)(1)(i), HRPP. We do not find it necessary to address those issues. For purposes of this opinion, we assume that the prosecution violated its duty under Rule 16, HRPP.

With respect to item 2, there is no suggestion or indication in the record that the prosecution acted maliciously, egregiously, or in bad faith and the trial court did not so find and conclude.

We construe the trial court's actions as answering items 4, 6, and 8 in the affirmative.

The trial court did not answer item 5. We find that omission to be harmless. We assume the prejudice to be as described by defense counsel at trial: impairment of the ability to cross-examine the prosecution's witnesses.

With respect to items 6 and 7, we note that the trial court allowed defense counsel to call or recall all of the relevant individuals as witnesses to question them about the matters noted in sections. I, II and III above and to discuss those matters in argument to the jury. Thus, we find no error in the lower court's affirmative answer to item 8. *See State v. Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982); *State v. Sugimoto,* 62 Haw. 259, 614 P.2d 386 (1980).

V.

## PROSECUTION'S VIOLATION OF KAIU'S RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSES OF THE UNITED STATES AND HAWAII CONSTITUTIONS

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court decided that after a request by an accused for evidence, the suppression by the prosecution of evidence favorable to the accused violates the accused's constitutional right to a fair trial and due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution.

In Kaiu's case, were the items suppressed? Yes, except that the portions of Detective Chang's report that were initially suppressed were later produced during the trial. Are the items evidence? Yes. Is action by the police action by the prosecution? Yes. Is the evidence favorable to Kaiu? Yes. The debatable question is whether the evidence is material.

As noted in Wright, Federal Practice and Procedure: *Criminal 2nd*, § 254 (1982), the United States Supreme Court, in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), defined materiality in three different situations:

1. If a prosecution witness has given perjured testimony and the prosecution knew or should have known of the perjury, the evidence is material to the issue of guilt and the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

2. If the defendant has made a specific request for evidence which the prosecution fails to provide, the evidence is material to the issue of guilt if it might have affected the outcome of the trial.

3. If the defendant has made no request or only a general request for evidence which the prosecution fails to provide, the evidence is material to the issue of guilt if the omitted evidence creates a reasonable doubt that did not otherwise exist.

In *Agurs*, the Supreme Court described a general request as being a request for "all *Brady* material" or for "anything exculpatory." 427 U.S. at 106, 96 S.Ct. at 2399, 49 L.Ed.2d at 351. In Kaiu's

case, he asked for the names of the prosecution's witnesses and their "relevant written or recorded statements[.]" We conclude that Kaiu thereby made a specific request for the suppressed items.

Thus, the issue is whether or not the suppressed evidence might have affected the outcome of the trial. Based on the record, our answer is no. In other words, the suppressed evidence was not material; therefore, its suppression did not violate Kaiu's constitutional right to a fair trial and due process.

Affirmed.

*Alvin T. Sasaki,* Deputy Public Defender, and *Calvin Pang,* Certified Law Student, on the briefs for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.