903 P.2d 690

STATE of Hawai'i, Plaintiff–Appellee,

v.

Shane AHLO, Defendant–Appellant.

No. 16548.

Intermediate Court of Appeals of Hawai'i.

July 25, 1995.

Reconsideration Granted Aug. 7, 1995.

Order Declining to Amend Opinion on Reconsideration Sept. 27, 1995.

Christopher R. Evans, on the briefs, Honolulu, for defendant-appellant.

James M. Anderson, Deputy Pro. Atty., City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE, and ACOBA, JJ.

WATANABE, Judge.

Defendant–Appellant Shane Ahlo (Defendant) appeals from the judgment and sentence entered by the First Circuit Court on August 25, 1992, following his jury conviction of one count of Burglary in the First Degree, a violation of Hawai'i Revised Statutes (HRS) § 708–810(1)(c) (1985), and two counts of Terroristic Threatening in the First Degree, a violation of HRS §§ 707–715(1) (1985) and 707–716(1)(d) (Supp.1992).

Defendant contends that the lower court reversibly erred by: (1) improperly denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 48 motion, thereby depriving him of his right to a speedy trial; (2) improperly denying his motion to continue trial to accommodate his substitute counsel, thereby depriving him of his right to effective assistance of counsel; (3) improperly excluding crucial defense evidence as a means of sanctioning Defendant for violation of the discovery rules, specifically HRPP Rule 16, thereby depriving him of his right to a fair trial; and (4) allowing the deputy prosecuting attorney to engage in behavior that constituted prosecutorial misconduct.

For the reasons set forth below, we affirm Defendant's conviction for first degree burglary. However, we vacate his convictions of two counts of first degree terroristic threatening.

## I. BACKGROUND

### A. Facts

On January 27, 1990, at about 2:30 p.m., Antonette DeMello (DeMello), Defendant's girlfriend at the time and the mother of his son, was visiting the home of Sherryl Santiago (Santiago), the complaining witness. Between 3:00 and 3:30 p.m., both DeMello and Santiago were in Santiago's bedroom when they heard a knock at the front door, followed by pounding on Santiago's bedroom door.[1] Santiago testified that she and DeMello knew that the person at the door was Defendant because he was also calling out DeMello's name.

As soon as DeMello opened the door, Defendant grabbed her and repeatedly demanded that she accompany him home. She refused, and Defendant eventually left, taking their son with him. Santiago testified at trial that DeMello was crying throughout the episode and became "hysterical" after Defendant left. Transcript (Tr.) 7/7/92, at 19–21. Santiago stated that she then called the police at DeMello's request.

About five minutes later, Defendant returned to Santiago's house. Santiago testified that she and DeMello were in the patio when Defendant entered through the unlocked front door, holding an object that "looked like a gun." Id. at 23. He entered the patio, pointed the object at DeMello, and again demanded that she accompany him home. DeMello ran behind Santiago, whereupon Defendant, now pointing the object in the direction of both women, "reached over and grabbed [DeMello]" and "pulled her to the floor." Id. at 26. At this point, Santiago testified, Defendant was holding the object to DeMello's head, while DeMello was on the floor "screaming and crying." Id. at 27. Santiago also stated that she did not intervene because she felt helpless and was afraid for DeMello's safety. Eventually, DeMello got up and left the house with Defendant. Santiago also left and went to her boyfriend's house "for safety ... [j]ust in case anything else would happen." Id. at 30.

Honolulu police officers Gary Kawasaki and Garret Ito, responding to a report of a "kidnapping and a weapons type of offense," arrived at the home of Santiago's boyfriend at 5:36 p.m. Tr. 7/1/92, at 18. There, Santiago explained what had happened and gave them the address of Defendant's residence. She also gave them a description of the vehicle Defendant was driving when he left her house that day.

The officers proceeded to Defendant's house and, after obtaining written consent from Defendant's father, Malcolm Ahlo, Sr., conducted a search of a vehicle matching Santiago's description of the vehicle Defendant had been driving. Although they had "[h]opes of finding a handgun," the officers did not find a gun in the car. Id. at 29. Shortly thereafter, Defendant was arrested and charged with the aforementioned offenses.

### B. Procedural History

On June 30, 1992, the day trial was to commence, Defendant's counsel, Darwin Ching (Ching), moved to withdraw as counsel, claiming that an hour earlier, Defendant had expressed a desire to have attorney Christopher Evans (Evans) represent him instead. The trial judge informed Defendant that, although Defendant had the right to make the last-minute substitution, the case would definitely go to trial that afternoon and no continuance would be granted. The following colloquy occurred:

> THE COURT: Okay. In this case is charged against you burglary in the first degree, terroristic threatening in the first degree in two different counts, okay. I don't know the facts of the case. The charge may be complicated, one [sic]. And Mr. Ching knows all the facts about this case, maybe far better than Mr. Evans, your new attorney.
>
> You fully realize that the Court will not grant Mr. Evans' motion for a continuance.

1. Defendant was apparently permitted to enter the house by Sherryl Santiago's sister.

THE DEFENDANT: Yes, sir.

THE COURT: Well, we will go to trial right away and you can decide to go to trial and you are going to be at a disadvantage because you are retaining new counsel who may not know all the facts about this case. You fully realize that?

. . . .

Now my question is, knowing all of the pitfalls of a trial, all of the pitfalls of hiring a new attorney on the hour of trial itself, do you wish to discharge Mr. Ching as your attorney?

. . . .

THE DEFENDANT: Yes, I understand, Your Honor.

Tr. 6/30/92, at 3–4. The trial court accordingly granted Defendant's motion to substitute counsel but denied Defendant's motion for a continuance.[2]

Defendant then orally moved that the charges against him be dismissed for violation of his HRPP Rule 48[3] right to a speedy

trial. Defendant represented that 418 days had elapsed from the date of the indictment (May 9, 1991) to the first day of trial (June 30, 1992) and agreed to stipulate that the following time periods, totaling 133 days, were excludable: (1) 17 days (June 7, 1991 to June 24, 1991) for Defendant's motion for release on his own recognizance; (2) 105 days (July 15, 1991 to October 28, 1991) for Defendant's motion to extend the pretrial motions deadline; and (3) 11 days, excluding overlap (August 26, 1991 to November 8, 1991) for Defendant's motion to dismiss the grand jury indictment.

Defendant maintained that when the 133 days were subtracted from the 418 days, trial did not commence within 180 days as required under Rule 48.

In response, the State indicated that 416 days[4] had elapsed between indictment and commencement of trial. The State argued that, in addition to the 133 days stipulated as excludable by Defendant, the following peri-

---

**2.** The court granted Defendant's motion to substitute counsel on June 30, 1992. Transcript (Tr.) 6/30/92, at 5. However, the written order granting the motion denotes June 29, 1992 as the day the motion was granted. Record on Appeal at 219.

**3.** Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (1994) provides in relevant part:

**Rule 48. DISMISSAL.**

. . . .

**(b) By Court.** Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

. . . .

**(c) Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:

(1) periods of delay resulting from collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals and trials of other charges;

(2) periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3) periods of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel;

(4) periods of delay resulting from a continuance granted at the request of the prosecutor if:

(i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or

(ii) the continuance is granted to allow the prosecutor additional time to prepare his case and additional time is justified because of the exceptional circumstances of the case;

(5) periods of delay resulting from the absence or unavailability of the defendant;

(6) the period between a dismissal of the charge by the prosecutor to the time of arrest or filing of a new charge, whichever is sooner, for the same offense or an offense required to be joined with that offense;

(7) a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance; and

(8) other periods of delay for good cause.

**4.** Based on our calculations, Defendant was correct in asserting that a total of 418 days (including the extra leap year day in 1992) had actually elapsed between indictment and commencement of trial.

ods were excludable: (1) the 95–day period [5] between November 25, 1991 and the end of February 1992 (96–day period) [6] when Santiago, the key prosecution witness, was about to give birth, giving birth, recuperating from childbirth, or on a vacation trip to the mainland United States; (2) the 42–day period between March 4, 1992 and April 15, 1992 (42–day period) due to illness of Defendant's counsel [7]; and (3) the 18–day period between April 21 and May 7, 1992 (18–day period) due to the postponement of the trial date because Santiago was again on vacation and unavailable to testify.

The trial court ultimately decided that a total of 270 days was excludable: the 133 days stipulated by the parties, the 95–day period,[8] and the 42–day period.[9] The trial judge apparently did not take the 18–day period into account in concluding that a net of 146 days $(416 - 270 = 146)$ had elapsed since Defendant's indictment, and the proceedings against Defendant clearly fell within the 180–day mandate of Rule 48(b).

On the final day of trial, following direct examination of Santiago, Evans asked for a bench conference with the trial judge. At the conference, Evans produced a gun-like cigarette lighter which he alleged had been used by Defendant in the incident, showed it to the deputy prosecuting attorney, and expressed his intent to use it as an exhibit in defense to the two counts of terroristic threatening. The prosecutor objected to the admission of the lighter, stating that it was "the first time [he had] ever seen it," and that its existence had not been properly disclosed under the discovery rules. The following colloquy ensued:

MR. AKAMINE [PROSECUTOR]: Your Honor, there is continuing obligation for discovery.

MR. EVANS: He's never asked for it.

THE COURT: Well, I think you have an obligation if you're going to use the item as evidence.

MR. EVANS: I disclosed in my opening statement.[10] If the prosecutor wanted to look at it, he's had ample time in the last three or four days to ask to look at it. He hadn't done so. It's not my problem.

. . . .

THE COURT: You have an obligation, even though the prosecutor did not ask for it. Because how did he know what to ask for?

MR. EVANS: Your Honor, that's not the problem. The problem is, it was disclosed to the Prosecution, and he never asked to look at the object.

---

5. Because of the extra leap year day in February, the elapsed time period was 96 days.

6. See *supra* note 5.

7. On March 4, 1992, the day trial was to begin, Defendant's counsel called in sick, and the trial was reset to April 15, 1992.

8. Although the trial judge did not submit written findings of fact or conclusions of law, he made the following oral ruling regarding the exclusion of the 95–day period for Santiago's absence:

> First, the Court will take judicial notice of the records and files and I will rule that representation by Vickie Silberstein as an officer of the Court will take it as face value unless you can show me that she was not telling the truth and I will consider the ninety-five days being and [sic] exception [sic] circumstance in the case and I will exclude the ninety-five days.

Tr. 6/30/92, at 15–16.

9. As to the 42–day period, the trial judge stated: Again, I will take those forty-two days to be exception [sic] circumstances in this case. Mr.

Ching was ill at that time and even though the doctor said he will be out for two or three days does not mean that he will be ready and physically able to withstand the trial. I will grant those forty-two days exception in favor of the prosecution and will exclude those forty-two days.

*Id.* at 17.

10. During his opening argument, Evans stated:

> Now I expect the evidence to show in this case that what [Defendant] had in his hands was his key chain from the car. What was attached to the key chain was a toy cigarette lighter that looks like a gun. A small one. This is supposedly what [Santiago] is describing as a gun but I expect the evidence to show it was not a gun, it was a cigarette lighter.
>
> I further expect the evidence to show that the same key chain with the lighter was in the hand when [Defendant] happened to get ahold [sic] of [DeMello] and say, "Come on, you are coming with me. Let's go."

Tr. 7/1/92, at 14.

THE COURT: The problem is; [sic] under the rules, you ought to disclose what you intend to use in the trial. That's your obligation.

MR. EVANS: No, Your Honor.

THE COURT: How should the prosecutor know what you have as evidence?

MR. EVANS: He's known it all along, because I said it in my opening argument. Tr. 7/7/92, at 39–41 (footnote added).

Despite Evans' protests, the trial court sustained the objection to admission of the gun-like cigarette lighter. However, the court also ruled that the witnesses, including Defendant, would be allowed to testify as to the lighter, i.e., provide a description of the object and identify it as that used in the incident. *Id.* at 56. Evans advocated a recess, rather than exclusion of the gun-like cigarette lighter, as the proper remedy and persisted in challenging the court's decision. In response, the judge found Evans in direct contempt of court and imposed a two-day jail sentence, mittimus to issue forthwith.

When Evans reminded the judge that he was entitled to have counsel and a hearing before being cited for contempt, a recess was called so Evans could retain counsel in regard to the contempt charge. When court subsequently reconvened out of the presence of the jury, Evans informed the court that his counsel for the contempt proceeding was detained in another courtroom and would be arriving shortly. Evans also asked the trial court to reconsider its earlier sanctions ruling.

Present with Evans was Ching, Defendant's former attorney, who then recounted some of the historical developments of the instant case. Ching explained that the case had been reset for trial five or six times, and, although he had never physically submitted the gun-like cigarette lighter to the prosecutor's office, he had previously offered to exchange photographs and exhibit and witness lists with the deputy prosecuting attorney. However, the deputy prosecuting attorney had declined these previous offers, saying that the exchange could be done later when a firm trial date was set. Ching further explained that the photographs he had offered to exchange included one of a key chain to which the gun-like cigarette lighter was attached, and one of the items listed on the defense exhibit list was "key chain." Ching also maintained that he had previously informed the deputy prosecuting attorney that the defense intended to prove at trial that no real gun had been used in the incident. According to Ching, the deputy responded that Santiago had already disclosed that the gun used in the incident was not real. Despite such revelations, the trial court reaffirmed its ruling to preclude the gun-like cigarette lighter from being introduced into evidence.

Defendant did not testify at trial. Ultimately, he was convicted as charged, sentenced to five years' probation for each of the three counts, and required to comply with a number of special conditions of probation, among them, confinement in jail for a period of 90 days, with credit for time already served. On July 17, 1992, Defendant timely moved for judgment of acquittal or, in the alternative, for a new trial. The trial court issued a written order denying the motion on September 3, 1992, and Defendant filed his notice of appeal on October 21, 1992.

## II. *DISCUSSION*

### A. *Appellate Jurisdiction*

We first address the State's contention that we lack appellate jurisdiction to hear this case because Defendant failed to timely file his notice of appeal within the 30–day period prescribed by Rule 4(b) of the Hawai'i Rules of Appellate Procedure (HRAP).[11] In

---

**11.** Hawai'i Rules of Appellate Procedure Rule 4(b) provides in relevant part:

 **Appeals in criminal cases.** In a criminal case, whether the appeal is one of right or is an interlocutory appeal, the notice of appeal by a defendant shall be filed in the circuit or district court within 30 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 30 days after the entry of an order denying the motion.

order to comply with the rule, Defendant would have had to file his appeal by October 3, 1992; thus, his appeal was 18 days late. However, Rule 4(b) also provides:

> Upon a showing of excusable neglect or good cause the circuit or district court may, no later than 30 days after the time has expired, on motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision (b).

In this case, no motion to extend the time for filing the notice of appeal was ever filed. Despite this, Defendant contends that he should not be deprived of his right to appeal where there was excusable neglect or good cause for the failure. In light of the circumstances of this case, we agree.

■ This court and the Hawai'i Supreme Court have seen fit in criminal cases to relax the deadline for filing a notice of appeal "where justice so warrants." *See State v. Caraballo,* 62 Haw. 309, 615 P.2d 91 (1980) (permitting appeal filed after the deadline where defendant had withdrawn his initial appeal based upon counsel's erroneous advice); *State v. Erwin,* 57 Haw. 268, 554 P.2d 236 (1976) (holding that court-appointed counsel's failure to file a timely appeal for an indigent criminal defendant does not foreclose the defendant's right to appeal his conviction); *State v. Allen,* 2 Haw.App. 606, 638 P.2d 338 (1981) (applying the *Erwin* rule to criminal defendants who retain private counsel).

In this case, Defendant's privately retained trial attorney, Evans, filed a motion to withdraw as counsel on September 24, 1992, citing Defendant's failure to pay a retainer fee as the reason for his withdrawal. However, because Defendant was financially unable to obtain alternate counsel and the Office of the Public Defender could not represent him due to a conflict of interest, the court issued an order on October 20, 1992 appointing Evans as Defendant's attorney for all subsequent proceedings, including appeal. Evans filed a notice of appeal the following day.

■ Under these circumstances, faulting Defendant for his failure to comply with the 30–day rule would lead to harsh and unjust results. As the supreme court has recognized,

> [t]hese results can be even harsher in a criminal case than a civil one since in the latter suit the aggrieved client has, in theory, a malpractice action against his attorney for damages, while in the former no attorney can restore his client's lost liberty.

*Caraballo,* 62 Haw. at 314, 615 P.2d at 95 (quoting *Shipman v. Gladden,* 253 Or. 192, 202, 453 P.2d 921, 926 (1969)). Thus, in the interest of justice, we hold that Defendant's failure to comply with HRAP Rule 4(b) does not preclude his right to appeal. Accordingly, we have appellate jurisdiction to hear this case.

### B. *HRPP Rule 48*

HRPP Rule 48(b)(1) requires that criminal charges be dismissed if trial has not commenced within six months, or 180 days, of the date of arrest or filing of the charges.[12] *See State v. Ikezawa,* 75 Haw. 210, 214, 857 P.2d 593, 595 (1993). Pursuant to HRPP Rule 48(c), however, certain periods of delay are excluded from the calculation of the six-month period.

Defendant contends that the trial court wrongfully excluded the 96– and 42–day time periods in determining whether his right to a speedy trial under HRPP Rule 48 had been violated. Defendant points out that if these periods had not been excluded, the period that had elapsed from the date of indictment to the date of his trial would have far exceeded the 180–day trial commencement requirement.

■ When reviewing the denial of a Rule 48(b) motion to dismiss, we apply both the clearly erroneous and right/wrong tests. *State v. Hoey,* 77 Hawai'i 17, 28, 881 P.2d 504, 515 (1994). A trial court's findings of fact are considered clearly erroneous when (1) the record lacks substantial evidence to support the findings, or (2) despite substantial evidence to support the findings, the

12. See *supra* note 3.

appeals court is left with a definite and firm conviction that a mistake has been made. *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995). However, whether a particular fact falls within one of Rule 48(c)'s exclusionary provisions is a question of law and is freely reviewable under the right/wrong standard. *Hoey,* 77 Hawai'i at 28, 881 P.2d at 515.

We discuss each of the trial court's exclusions in turn.

### 1. *The 96–Day Exclusion*

On November 25, 1991, the date the case was originally set as first backup for trial, the deputy prosecuting attorney represented to the trial judge that Santiago was then eight-and-a-half months pregnant and requested that trial be continued until Santiago had given birth. Over defense counsel's objection, the trial court granted the continuance, removed the case from the ready calendar, and placed the case on "float" status. Santiago gave birth on December 27, 1991.

Prior to the commencement of trial on June 30, 1992, Defendant orally moved for dismissal of the charges against him, contending that his right to a speedy trial under HRPP Rule 48 had been violated by the extensive delay in bringing him to trial.

In determining that Defendant's Rule 48 speedy trial right had not been violated, the trial court excluded 95 days for the period from November 25, 1991 to February 29, 1992, concluding that the imminent birth of Santiago's baby and ensuring Santiago's full recovery and the baby's safety were exceptional circumstances [13] justifying a pre-trial delay.

Defendant now contends that the entire period between November 25, 1991 and February 29, 1992 (96 days) should not have been excluded because: (1) the exclusion of a full month prior to the birth of Santiago's

baby was unnecessary; and (2) the entire month of February 1992 should not have been excluded because "if [Santiago] was fit enough to go to the Mainland for five days, February 13 to February 18, 1992, she was fit enough to testify[.]" Opening Brief (O.B.) at 24.

We agree with Defendant that the period from February 19 to 29, 1992 (10 days) should not have been excluded. However, we conclude that the remaining 86 days were properly excluded by the trial court.

We note initially that, pursuant to Rule 48(c)(4)(i), "periods of delay resulting from a continuance granted at the request of the prosecutor" are excludable in computing the time for trial commencement "if . . . the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date[.]" Based on this rule, the Hawai'i appellate courts have held that periods of delay occasioned by the unavailability of the State's material witnesses are excludable in determining whether a defendant's Rule 48 right to a speedy trial has been violated. In *State v. Gillis,* 63 Haw. 285, 288, 626 P.2d 190, 193 (1981), for example, the supreme court held excludable a period of delay caused by a continuance requested by the prosecutor, who had been experiencing difficulty locating a principal prosecution witness. *See also State v. Hirano,* 8 Haw.App. 330, 802 P.2d 482, *cert. denied,* 71 Haw. 668, 833 P.2d 901 (1990) (it was within sound discretion of the court to grant a continuance because the State's material witnesses were scheduled to be in Japan for a two-week trip the day after trial was scheduled to start); *State v. Ferraro,* 8 Haw.App. 284, 800 P.2d 623 (1990) (delay due to unavailability of a material

---

**13.** The trial court apparently relied on HRPP Rule 48(c)(4)(ii) as authority for excluding the delay period prompted by Santiago's pregnancy. Rule 48(c)(4)(ii) allows exclusions for "periods of delay resulting from a continuance granted at the request of the prosecutor if the continuance is granted to allow the prosecutor additional time to prepare his case and additional time is justified because of the exceptional circumstances of

the case[.]" In this case, the prosecutor did not file a written motion for continuance and it appears from the record that the prosecutor's oral motion for continuance was handled in chambers. There is no indication in the record, however, that the continuance was requested because the prosecutor needed additional time to prepare his case. Therefore, the Rule 48(c)(4)(ii) exception is not applicable to this case.

witness, which does not appear to be deliberate or designed to give the State an advantage at trial, is excludable delay).

■ In this case, Santiago was the key prosecution witness. Her unavailability for trial was due to her advanced stage of pregnancy, her recuperation from childbirth, and a planned vacation. There is no evidence that her unavailability was deliberate or designed to give the State a tactical advantage at trial. Accordingly, we agree that the delays occasioned by her unavailability were properly excludable under Rule 48(c)(4)(i).

Defendant maintains, however, that the amount of days excluded by the trial court for Santiago's unavailability was unreasonable. We disagree with Defendant with respect to the time excluded prior to Santiago's delivery of her baby but agree that part of the time excluded subsequent to her delivery was wrongly excluded by the court.

■ At the time the trial court granted the State's request for continuance, it was impossible to predict with accuracy when Santiago would actually give birth. Santiago was close to full-term, however, and her baby could have arrived during trial and interrupted the proceedings. Therefore, the trial court was clearly justified in granting the continuance until Santiago had given birth and in excluding such period in determining Defendant's right to a speedy trial under Rule 48.

■ With respect to the period following delivery of Santiago's baby, the record is unclear as to why the trial court excluded a period of more than two months (December 28, 1991 to February 29, 1992), or 64 days. There is no indication as to when Santiago had recovered sufficiently from childbirth so as to be capable of testifying. We conclude, however, that barring complications arising out of childbirth, six weeks (42 days) is a reasonable recovery period following childbirth. In this case, the six-week period after December 27, 1991 would have ended on February 7, 1992, a Friday, and trial could have commenced on Monday, February 10, 1992. Because Santiago was scheduled to

leave Hawai'i on a trip on February 13, however, it was reasonable for the trial court to exclude February 11 and 12 as well. It was also proper for the trial court to exclude the period of delay from February 13 to 17, 1992, which was occasioned by Santiago's trip.[14] *See Ferraro*, 8 Haw.App. at 299, 800 P.2d at 632. Once Santiago returned from her trip on February 18, 1992, however, she was available and physically capable of testifying. Accordingly, the trial court erroneously excluded the 10–day period from February 19 to 29, 1992 in its Rule 48 computation.

### 2. *The 42–Day Exclusion*

Defendant further contends that the trial court erroneously excluded 42 days due to Ching's illness. He claims that there was no evidence to justify the exclusion for the entire duration because: (1) a note from Ching's physician stated that Ching was under his care and unable to perform his usual duties during the period from March 3 to 9, 1992; and (2) nothing in the record revealed that Ching was physically unable to proceed to trial thereafter.

■ Rule 48(c)(3), however, mandates the exclusion of "periods of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel[.]" Ching called in ill on March 4, 1992, the date the case was on the ready trial calendar, and, as a result, the ready trial date was reset to April 15, 1992. Nothing in the record suggests that Defendant or defense counsel attempted to abbreviate or terminate the 42–day continuance. In addition, the State "has no duty under Rule 48 to shorten or terminate a continuance granted at the request of defendant's counsel." *State v. Miller*, 4 Haw.App. 603, 607, 671 P.2d 1037, 1040 (1983).

We therefore conclude that the trial court correctly excluded the entire 42–day period.

### 3. *The Total Exclusion*

Rather than 270 days (133 + 95 + 42), the trial court should have excluded only 261

---

**14.** By the same reasoning, the 16–day period from April 21 to May 7, 1992, when Santiago was again on vacation, would likewise be excludable.

days (133 + 86 + 42) in calculating Defendant's HRPP Rule 48 right to a speedy trial. Excluding this period from the total elapsed time of 418 days, we calculate that Defendant's trial commenced within 157 days of the date of indictment; therefore, his right to a speedy trial under Rule 48 was not violated.

### C. Continuance of Trial

Defendant next contends that the trial court improperly denied his motion for a continuance of trial to accommodate the replacement of defense counsel Ching with Evans. As a result, Defendant argues that Evans was not allowed adequate preparation time and Defendant was effectively denied his right to effective assistance of counsel.

■ Generally, a request for continuance is subject to the sound discretion of the trial court, and a grant or denial of continuance will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Lee*, 9 Haw.App. 600, 603, 856 P.2d 1279, 1281, *reconsideration denied*, 9 Haw.App. 660, 861 P.2d 767, *cert. denied*, 75 Haw. 581, 861 P.2d 735 (1993). In addition, while "denial of a continuance is not *per se* a denial of the constitutional right to counsel, ... the appellate court should scrupulously review the record to determine whether, under all the circumstances, there was an abuse of discretion that prejudiced the defendant by amounting to an unconstitutional denial of the right to *effective* assistance of counsel." *State v. Torres*, 54 Haw. 502, 505, 510 P.2d 494, 496 (1973) (emphasis in original).

In *Torres*, an indigent criminal defendant personally moved for the appointment of a new attorney just prior to the date of trial. The court obliged and appointed another attorney but nonetheless denied the new attorney's motion for a continuance in order to prepare for trial, which was to commence the next day. Defendant was eventually convicted. He appealed, claiming that the trial court's denial amounted to a deprivation of his right to effective assistance of counsel.

In considering this issue, the Hawai'i Supreme Court employed a balancing test, weighing the rights of the defendant against the interests in judicial efficiency:

Our review of the authorities leads us to synthesize this rule: where the trial court exercises its discretion to approve new counsel for an indigent defendant it must provide new counsel adequate time to prepare to try the case. However, in light of the need to adhere to the court calendar and the great discretion vested by our system in the trial judge in the matter of granting continuances, *the burden is on the defendant to show the inadequacy of the preparation time by a demonstration of actual, not speculative, prejudice.*

*Id.* at 506, 510 P.2d at 497 (emphasis added).

■ In determining whether actual prejudice resulted from the alleged inadequacy of preparation time, the court looked at the following factors: (1) length of time for preparation; (2) complexity of the case; (3) counsel's performance at trial; (4) access to and availability of the work product of the previous attorney; and (5) the criminal defendant's own motivation in seeking a new attorney, as well as that defendant's responsibility for the new attorney's unpreparedness. *Id.* at 506–07, 510 P.2d at 497–98.

Applying the foregoing factors to this case, we first note that Defendant requested substitution of counsel on the morning of June 30, 1992. Trial was scheduled to commence that afternoon. Ching, Defendant's original counsel, claimed that he had been informed of Defendant's request only an hour earlier. However, there is no indication in the record as to when Defendant's new attorney, Evans, had been retained and when Evans began or should have begun preparing for trial. Furthermore, "length of time is not *per se* dispositive of the issue." *Id.* at 506, 510 P.2d at 497. We accordingly consider the remaining factors to determine whether Defendant suffered any actual prejudice.

Another important factor is the complexity of the case on the facts and the law. "Where either of these aspects of the case presents convoluted problems requiring great research, clearly greater time is required." *Id.* Here, Defendant's trial lasted about one week. We are not convinced that the case presented issues so complex that additional

preparation time would have made a difference in the defense. We are also unconvinced, as Defendant contends, that had the continuance been granted, Evans "would have had the time to research the rules of discovery" and thus "avert the trial court's ruling of exclusion." O.B. at 27–28. Defendant's argument demonstrates, at best, speculative prejudice, not the actual prejudice required to warrant reversal.

Similarly, as "we inquire 'into the ability, experience, and zeal with which counsel acted ... at the trial,'" *Torres,* 54 Haw. at 507, 510 P.2d at 497 (quoting *Moore v. United States,* 432 F.2d 730, 735 (3d Cir.1970)), we do not feel that Evans' performance was impaired by the denial of the motion to continue. In fact, immediately following Ching's release from the case, Evans orally moved for and argued the Rule 48 motion to dismiss. *See* Tr. 6/30/92, at 8. Furthermore, nothing in the record indicates that Ching's prior work product was unavailable to Evans.

Finally, we must consider Defendant's own motivation in seeking a new attorney and his responsibility for any unpreparedness by his attorney. Although Defendant did not specify a reason for the last-minute substitution of counsel, the record is clear, and the trial court found, that "[i]t was Defendant's own free wish and will to have Christopher R. Evans be his new attorney." Record on Appeal (R.A.) at 220. The supreme court observed in *Torres:*

> [W]here a defendant is himself to blame for tardiness of request for new counsel as would appear to be the situation here, this fact is extremely significant in showing that there was no abuse of discretion in failure to grant a requested continuance. Moreover, ... given that the circuit court judge had a better opportunity than we to observe the appellant's demeanor and evaluate his factual statements, we cannot find any abuse of discretion in a trial court finding less than sufficient reason, under the circumstances, for acceding to appellant's request to delay the trial.

*Torres,* 54 Haw. at 508, 510 P.2d at 498 (citations omitted).

In the present case, the trial judge expressed his concern that he had "a jury waiting down there since 10:30 this morning," and emphasized several times that the case definitely would go to trial that afternoon. Despite the trial judge's admonitions, Defendant was determined to substitute Evans for Ching. In light of the trial judge's repeated warnings and Defendant's assertions that he understood the consequences of the last-minute substitution, it appears that Defendant was largely responsible for the contention he now raises.

■ We therefore conclude, based on consideration of all the factors enumerated above, that the trial court did not abuse its discretion in denying Defendant's motion for a continuance to accommodate his substituted counsel. We are not convinced that a continuance would have substantially affected the outcome of the trial, and it does not appear from the record that Defendant suffered actual prejudice.

### D. Defendant's Violation of Criminal Discovery Rules

Defendant's next contention is two-fold: first, the trial court's finding that Defendant violated HRPP Rule 16, which requires pretrial disclosure of evidence by a criminal defendant, was erroneous because the rule does not require the defendant to physically submit discoverable objects to the prosecutor; and, second, if Defendant did violate Rule 16, the trial court's exclusion of the gun-like cigarette lighter as a means of sanction amounted to a violation of his right to a fair trial under the due process clauses of the United States and Hawai'i Constitutions.[15]

#### 1. Defendant's Failure to Disclose the Gun–Like Cigarette Lighter

At the time of Defendant's trial, HRPP Rule 16(c)(2) provided in relevant part:

15. The Fourteenth Amendment to the United States Constitution mandates, in relevant part: "... nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"

Article I, section 5 of the Hawai'i Constitution similarly provides: "No person shall be deprived of life, liberty, or property without due process of law[.]"

(2) *Disclosure of materials and information.* Upon written request of the prosecutor, the defendant shall disclose to him the following material and information within the defendant's possession or control:

. . . .

(iii) any books, papers, documents, photographs, or tangible objects which the defendant intends to introduce at the trial.

HRPP Rule 16(e), entitled "Regulation of discovery," provided in relevant part:

(1) *Performance of Obligations.* The parties may perform their obligations of disclosure in any manner mutually agreeable to the parties or by notifying the attorney for the other party that material and information, described in general terms, may be inspected, obtained, tested, copied or photographed at specified reasonable times and places.

(2) *Continuing duty to disclose.* If subsequent to compliance with these rules or orders entered pursuant to these rules, a party discovers additional material or information which would have been subject to disclosure pursuant to this Rule 16, he shall promptly notify the other party or his counsel of the existence of such additional material or information, and if the additional material or information is discovered during trial, the court shall also be notified.

In this case, the State, in its Written Request for Disclosure, requested that Defendant disclose and send to Deputy Prosecuting Attorney Bryan K. Sano, within 30 days of the date of the request: "any books, papers, documents, photographs, or tangible objects that the Defendant intends to introduce as evidence at the trial." R.A. at 8–9.

Defendant concedes that the gun-like cigarette lighter was never shown to the State. Nevertheless, he contends that he complied with the State's request and with Rule 16, since his former counsel, Ching, claims that he talked to the deputy prosecuting attorney and offered to exchange "the Defendant's witness and exhibit list and look at the pictures of the house . . . that [the deputy prosecuting attorney] had not turned over to [the defense]." Tr. 7/7/92, at 48. Defendant maintains that the list properly disclosed the existence of the gun-like cigarette lighter, as well as photographs of the lighter, even though the object was referred to as a "key chain" on the exhibit list.

Defendant also argues, and the State does not dispute, that at the time of Ching's offer, the deputy prosecutor had not been interested in reviewing Defendant's exhibit lists or exhibits, indicating that the exchange could be done closer to trial. In addition, Defendant points out, the deputy prosecutor had been specifically informed by Santiago, prior to trial, that the gun Defendant used to threaten DeMello was not "real"; thus, the prosecution was fully aware of the existence of the gun-like lighter and did not suffer any negative consequences from the alleged nondisclosure.

At trial, the court concluded that Defendant had not complied with the disclosure requirements of HRPP Rule 16, stating that Defendant should have physically submitted to the prosecution all evidence he intended to introduce at trial.

In view of HRPP Rule 16(e)(1), which allows the parties in a criminal case to perform their disclosure obligations in a mutually agreeable manner or by notifying the attorney for the other party that disclosable material may be inspected, obtained, tested, copied, or photographed at specified reasonable times and places, we cannot conclude that Defendant clearly violated Rule 16.

However, we are also not persuaded that Defendant's actions amounted to substantial compliance with Rule 16. While it is true that Defendant's former counsel made offers to submit an exhibit list and photographs of evidence to the prosecutor, he ultimately withheld these items and waited for the prosecutor to ask for them.

Defendant's former counsel also was a bit disingenuous in identifying the crucial piece of defense evidence as a "key chain." Rule 16(c)(2)(iii) clearly states that a criminal defendant "shall disclose" to the prosecutor any evidence to be introduced at trial. " 'The basic purpose of a trial is the determination of truth' . . . and the goal of pre-trial discov-

ery in both civil and criminal cases has been to promote the fact-finding process and to eliminate the tactical advantage of surprise by either side." *People v. Rayford,* 43 Ill. App.3d 283, 286, 1 Ill.Dec. 941, 944, 356 N.E.2d 1274, 1277 (1976) (quoting *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, *reh'g denied,* 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966)).

In this case, the prosecutor was unequivocally entitled to be informed about the existence of the gun-like cigarette lighter. Defendant's tactical maneuver in identifying the lighter as a "key chain" bordered on deception and served to hinder, rather than help, the fact-finding process. We cannot fault the trial judge, therefore, for concluding that Defendant failed to comply with the rules of criminal discovery.

### 2. *Exclusion of Evidence as Sanction for Violation of Criminal Discovery Rules*

■ The second issue regarding Rule 16 is whether the trial court properly excluded the gun-like cigarette lighter as a means of sanctioning Defendant, pursuant to HRPP Rule 16(e)(8),[16] for failure to comply with the discovery rules. Because the imposition of such a sanction is addressed to the sound discretion of the trial court, we will not disturb the trial court's decision unless there has been an abuse of that discretion. *See State v. Montalbo,* 73 Haw. 130, 135, 828 P.2d 1274, 1278 (1992); *State v. Marzo,* 64 Haw. 395, 397, 641 P.2d 1338, 1340 (1982) (per curiam).

Defendant was charged with two counts of Terroristic Threatening in the First Degree—one count each as committed against DeMello and Santiago. According to HRS § 707–715 (1985),

[a] person commits the offense of terroristic threatening if he threatens, by word or conduct, to cause bodily injury to anoth-

er person or serious damage to property of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

This offense is elevated to one of first degree where the offender commits terroristic threatening "[w]ith the use of a dangerous instrument." HRS § 707–716(1)(d) (Supp. 1992). "Dangerous instrument" is defined as:

any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.

HRS § 707–700 (Supp.1992).

The crux of Defendant's case at trial was that the object used in the incident, i.e., the gun-like cigarette lighter, did not fall into the definition of "dangerous instrument" under HRS § 707–700, and thus the State lacked an essential element of the two counts of First Degree Terroristic Threatening. Defendant now contends that the trial court's exclusion of the lighter precluded the jury from properly evaluating essential defense evidence, thereby violating his right to due process and a fair trial. We agree.

■ We recognize at the outset that a trial court's ability to impose sanctions for violations of the criminal discovery rules is an integral part of the discovery process. In general, "[d]iscovery sanctions serve the objectives of discovery by correcting for the adverse effects of discovery violations and deterring future discovery violations from occurring." *Taylor v. Illinois,* 484 U.S. 400, 425, 108 S.Ct. 646, 661, 98 L.Ed.2d 798 (Brennan, J., dissenting), *reh'g denied,* 485

---

16. At the time of Defendant's trial, HRPP Rule 16(e), entitled "Regulation of Discovery," provided in relevant part:

(8) *Sanctions.*

(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto,

the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

(ii) Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

U.S. 983, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988).

■ We are equally aware, however, that while "[s]anctions are designed to accomplish the purpose of discovery ... it is clear that the imposition of sanctions should not encroach on a fair trial." *Rayford,* 43 Ill. App.3d at 286, 1 Ill.Dec. at 944, 356 N.E.2d at 1277. In particular, the exclusion of defense evidence in criminal cases as a means of sanction is a drastic measure, *id.,* for the " 'right [of a defendant] to adduce evidence in his behalf [is one] of the fundamentals inherent in the due process guarantee of a fair trial.' " *State v. Mabuti,* 72 Haw. 106, 115, 807 P.2d 1264, 1269 (1991) (quoting *State v. Horn,* 58 Haw. 252, 255, 566 P.2d 1378, 1380 (1977)). *See also People v. Milton,* 72 Ill. App.3d 1042, 1051, 28 Ill.Dec. 716, 723, 390 N.E.2d 1306, 1313 (1979) ("The rule does give the trial judge discretion to exclude the evidence involved, but this is a harsh sanction which, if used indiscriminately, may prejudice the rights of a defendant and constitute reversible error."); *Patterson v. State,* 419 So.2d 1120, 1122 (Fla.Dist.Ct.App.1982), *review denied,* 430 So.2d 452 (Fla.1983) ("[E]xclusion is a severe remedy that raises very serious questions concerning the fairness of the judicial process.").

Whether the trial court properly excluded critical defense evidence to sanction a criminal defendant for violation of Rule 16 discovery is a question of first impression in this jurisdiction; however, this court and the Hawai'i Supreme Court have considered cases in which the *prosecutor* has violated Rule 16. For example, in *Marzo,* 64 Haw. 395, 641 P.2d 1338 (1982) (per curiam), the trial court found that the State had violated Rule 16(b)(2)(ii) by failing to furnish the defendant with a police report containing exculpatory evidence. The court sanctioned the State by dismissing with prejudice three charges of criminal assault against the defendant.

Reversing the dismissal of the charges, the Hawai'i Supreme Court noted that "[i]n exercising the broad discretion as to sanctions, the trial court should take into account the reasons why the disclosure was not made, the extent of prejudice, if any, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *Id.* at 397, 641 P.2d at 1340. *See also State v. Moriwaki,* 71 Haw. 347, 791 P.2d 392 (1990); *State v. Kaiu,* 5 Haw.App. 350, 692 P.2d 1166 (1984). More recently, this court held that before a "court orders dismissal of a case because of the State's violation of HRPP Rule 16, it must consider whether less severe measures would rectify prejudice caused to the defendant by the violation." *State v. Dowsett,* 10 Haw.App. 491, 495, 878 P.2d 739, 742, *cert. denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994).

■ We hold today that where the *defendant* has violated Rule 16, as in the instant case, a similar standard applies.[17] *See Bradford v. State,* 278 So.2d 624 (Fla.1973); *Richardson v. State,* 246 So.2d 771 (Fla.1971).[18]

---

**17.** Some courts and commentators have suggested that exclusion of defense evidence as a means of sanction for violation of discovery per se implicates a defendant's rights under the Compulsory Process Clause of the Sixth Amendment. *See, e.g., United States v. Davis,* 639 F.2d 239, 243 (5th Cir.1981); *Lewis v. State,* 411 So.2d 880, 882–83 (Fla.Dist.Ct.App.1981) (Baskin, J., dissenting). *See also Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (Brennan, J., dissenting); Note, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense,* 81 Yale L.J. 1342, 1351–52 (1972). We refrain, however, from reaching the constitutional issue in the present case.

The majority of such cases have involved preclusion of exculpatory witness testimony, which is expressly protected under the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor[.]"

The instant case, however, involves the exclusion of tangible evidence rather than witness testimony. Consideration of Sixth Amendment concerns, therefore, would require us to adopt a broad reading of the Compulsory Process Clause, i.e., that the right encompasses the general right to present a defense, including documentary and tangible, as well as testimonial, evidence. Though other courts have recognized such a broad reading, we are not prepared to do so in this appeal. Furthermore, Defendant has not raised Sixth Amendment issues in his briefs.

**18.** In *Richardson v. State,* 246 So.2d 771 (Fla. 1971), the Florida Supreme Court held that where the prosecution has violated criminal discovery rules, the trial court has discretion to determine whether noncompliance will prejudice the defendant and to order appropriate sanctions, but only after the court has made an adequate inquiry into all surrounding circumstances.

Thus, when a criminal defendant violates Rule 16 by failing to disclose to the prosecutor evidence intended to be used at trial, the trial court must consider the following: (1) whether the defendant was acting maliciously or in bad faith; (2) the extent of prejudice to the prosecution caused by the violation; (3) whether the prejudice could have been cured by measures less severe than excluding evidence; and (4) any other relevant circumstances. *See Kaiu,* 5 Haw.App. at 354–55, 692 P.2d at 1170.

> The primary purpose of this inquiry is to ferret out procedural prejudice occasioned by discovery violations. Thus, the trial judge must decide whether the violation hindered or prevented the aggrieved party from properly preparing for trial and may impose a remedy only if a finding of such prejudice is made.

*Patterson,* 419 So.2d at 1123 (citations omitted). In addition, the "prejudice that the state suffers from the discovery violation must be actual prejudice, not just a theoretical disadvantage that arises because of a reduced opportunity to prepare for trial." *State v. Clarke,* 106 Or.App. 204, 207, 808 P.2d 92, 93 (1991).

 In the present case, the trial court imposed the sanction with the apparent belief that the State would suffer prejudice as a result of Defendant's discovery violation; however, the court did not assess the extent of the prejudice. Although the prosecutor claimed he was surprised by the gun-like cigarette lighter, he failed to indicate how his case would be prejudiced by its introduction at that point in the trial. In addition, the prosecutor did not dispute defense attorney Ching's contention that Santiago had informed the prosecutor in an earlier interview that the object "was not a real gun." Tr. 7/7/92, at 51. Furthermore, the prosecutor was on notice that the gun-like object existed, as Evans had mentioned it in his opening statement. Based on the record in this case,

we conclude that any actual prejudice to the prosecution caused by Defendant's violation was minimal.

We are also not convinced that evidence exclusion was the most effective method of sanction available. Rule 16(e)(8) affords the trial court broad discretion in imposing sanctions, including permitting the discovery, granting a continuance, or entering "such other order that it deems just under the circumstances." Exclusion may be ordered, " 'provided that the court finds that the prosecution is prejudiced by the defendant's failure to comply with the reciprocal discovery statutes, and provided further, that it appears that no sanction short of preclusion effectively will avoid the prejudice which the defendant's lack of compliance created.' " *State v. Ben,* 310 Or. 309, 317, 798 P.2d 650, 654 (1990) (quoting *State v. Mai,* 294 Or. 269, 280, 656 P.2d 315, 321 (1982)). *See also Clarke,* 106 Or.App. at 207, 808 P.2d at 93 (noting that exclusion of evidence is appropriate only when no lesser sanction would accomplish the purpose of the criminal discovery rules).

In the present case, we think that a recess or brief continuance of the proceedings would have given the prosecutor ample time to examine the object and to cure any prejudice the State may have suffered. As noted above, the prosecutor was not completely unaware of the existence of the gun-like cigarette lighter prior to Santiago's cross-examination. Additionally, Defendant was still subject to the lesser offense of second degree terroristic threatening, which does not require the "dangerous instrument" element.

In sum, we find that the harsh sanction of exclusion of the gun-like cigarette lighter was not justified by any actual prejudice the State may have suffered as a result of Defendant's violation of Rule 16 and amounted to

---

Subsequently, in *Bradford v. State,* 278 So.2d 624 (Fla.1973) the supreme court held that a similar rule applied when the defendant violated discovery rules. This rule was rearticulated by the Florida appeals court in *Patterson v. State,* 419 So.2d 1120, 1123 (Fla.Dist.Ct.App.1982), *review denied,* 430 So.2d 452 (Fla.1983), as follows:

Whether a remedy such as an exclusion should be imposed depends on the totality of circumstances, including such factors as whether the violation was inadvertent or willful, whether it was trivial or substantial, and, most importantly, whether it has prejudiced the opposition's ability to prepare for trial.

an abuse of discretion by the trial court.[19] The exclusion may instead have had the opposite effect of prejudicing Defendant, who was relying almost completely on the gun-like cigarette lighter as a defense to the two counts of terroristic threatening, and thus impaired his rights to due process and a fair trial.

### E. *Prosecutorial Misconduct*

Defendant's final contention is that the State engaged in prosecutorial misconduct by misrepresenting to the court that the State was unaware of the existence of the gun-like cigarette lighter. There is no evidence in the record to support this contention. The prosecutor merely stated at trial that he had not previously seen the gun-like cigarette lighter and was not aware that it would be physically presented as evidence at trial. This representation does not constitute prosecutorial misconduct warranting reversal of the judgment.

### III. *CONCLUSION*

We hold that the exclusion of the gun-like cigarette lighter as a means of sanctioning Defendant for violating criminal discovery under Rule 16 constituted an abuse of discretion by the trial court. Accordingly, we vacate Defendant's convictions of two counts of Terroristic Threatening in the First Degree and remand for a new trial consistent with this opinion. However, because the use of a dangerous weapon is not a material element of the first degree burglary offense which Defendant was charged with committing, we affirm Defendant's judgment and conviction of Burglary in the First Degree.

---

**19.** We recognize that "[a]lthough the sanction of exclusion is undeniably a severe one, there nonetheless are circumstances in which an alternative sanction might very well perpetuate rather than limit the prejudice to the prosecution and thus aggravate the very harm to the fact-finding process which the disclosure requirement seeks to avoid." *People v. Hampton,* 758 P.2d 1344, 1351–52 (Colo.1988). However, we seriously question whether the exclusion of possibly *exculpatory* evidence, whether documentary, tangible, or testimonial, is ever appropriate to sanction a criminal defendant, especially since such exclusion will invariably result in a subsequent claim

---

### ORDER UPON RECONSIDERATION OF OPINION FILED JULY 25, 1995

Upon reconsideration of our opinion filed on July 25, 1995, and in view of *State v. Robins,* 66 Haw. 312, 660 P.2d 39 (1983), *State v. Israel,* 78 Hawai'i 66, 73–74, 890 P.2d 303, 310–11 (1995), and the record in this case, we hereby decline to amend our opinion.

The indictment in this case charged Defendant with two counts of "Terroristic Threatening in the First Degree, in violation of Section 707–716(1)(d) of the Hawai'i Revised Statutes," Record on Appeal (R.A.) at 1–2, and the following count of Burglary in the First Degree:

> *COUNT I:* On or about the 27th day of January, 1990, in the City and County of Honolulu, State of Hawaii [Hawai'i], SHANE AHLO did intentionally enter or remain unlawfully in a building, to wit, the residence of Sherryl Santiago, situated at 91–1063 Kuhina Street, *with intent to commit therein a crime against a person or property rights and did recklessly disregard the risk that the building was the dwelling of another, and the building is such a dwelling, thereby committing the offense of Burglary in the First Degree, in violation of Section 708–810(1)(c) of the Hawaii [Hawai'i] Revised Statutes.*

R.A. at 1 (emphasis added).

Pursuant to Hawai'i Revised Statutes § 708–810(1)(c) (1993),[1] an essential element of the offense of Burglary in the First Degree is that the defendant intentionally entered or remained unlawfully in a building

---

by the defendant of ineffective assistance of counsel.

**1.** Hawai'i Revised Statutes § 708–810(1)(c) (1993) provides, in relevant part:
**Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
 \* \* \*
 (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

"with intent to commit therein a crime against a person or property rights." Defendant contends that because he was charged with two counts of Terroristic Threatening in the First Degree, his conviction for Burglary in the First Degree is premised on an intention to commit those offenses and therefore cannot stand once his convictions for Terroristic Threatening in the First Degree are vacated. We disagree.

■ The burglary count against Defendant did not identify the particular crime which Defendant intended to commit when he intentionally entered or remained unlawfully in Sherryl Santiago's residence, and the Hawai'i Supreme Court has indicated, on two occasions, that it was not necessary to do so. In *State v. Robins*, 66 Haw. 312, 660 P.2d 39 (1983), the court explained that:

> what makes that act the crime of burglary rather than trespass is the intent to commit a crime against a person or property rights.
>
> However the crime intended to be committed on the premises does not have to be committed in order to make the act of entering or remaining the crime of burglary, only the intent must be formed. Intent, of course, is subjective, although it is usually proved by inference from the acts of the accused. Thus, intentionally entering or intentionally remaining unlawfully upon the described premises with the intent to commit any crime against a person or property rights constitutes burglary and, therefore, it cannot logically be said that specifying the particular crime intended to be committed is, under our statutes, an essential element which must be alleged in order to charge the crime of burglary.

*Id.* at 314–15, 660 P.2d at 41.

More recently, in *State v. Israel*, 78 Hawai'i 66, 890 P.2d 303 (1995), the state supreme court reaffirmed its holding in *Robins* that the specific crime which a defendant allegedly intended to commit is not an essential element of burglary. The court said:

> The *Robins* holding makes sense in burglary cases because a burglary is complete at the moment an actor "enters or remains unlawfully" in a building with the requisite state of mind, and the State is not required

to prove any other conduct, attendant circumstances, or results of conduct.

*Id.* at 74, 890 P.2d at 311.

Based on the foregoing precedent, Defendant, in order to be convicted of Burglary in the First Degree, only had to have the requisite intent to commit a crime against a person or property rights. The record on appeal contains substantial evidence that Defendant intended to threaten DeMello, his girl friend. Indeed, Defendant's defense at trial was that he did not use a real gun to carry out his threats and therefore should not be found guilty of Terroristic Threatening in the First Degree. There was clearly sufficient evidence to conclude that Defendant intended at least to commit the offense of Terroristic Threatening in the Second Degree.

ACOBA, Judge, dissenting TO ORDER UPON RECONSIDERATION OF OPINION FILED JULY 25, 1995

We vacated and remanded this case for a new trial on the terroristic threatening convictions but not the burglary conviction. An element of the burglary charge is that Defendant entered a building with the "intent to commit a crime therein." The indictment and the facts set forth in our opinion indicate the "crime therein" was the crime of terroristic threatening. Because we remand the terroristic threatening charges, I believe we must also remand the burglary charge.

The pleadings and facts in this case show that the "intent" element in the burglary case rested on the crime of terroristic threatening. I presume from our opinion that that was the way the case was presented to the jury. While the State need not prove the underlying crime in a burglary charge, *State v. Israel*, 78 Hawai'i 66, 890 P.2d 303 (1995), here, the indictment and the facts linked the burglary charge with the terroristic threatening charges.

The State contends that the other possible crimes which might be inferred from Defendant's actions under the burglary charge were harassment, unlawful imprisonment, and kidnapping. That is no consolation, however, since the jury was never instructed that

these were the possible crimes for which Defendant's culpable intent under the burglary charge might also be inferred. The court only instructed the jury with respect to the burglary and terroristic threatening offenses. No instruction was given to the jury as to any other possible crimes, much less those pointed out by the State, as to which the Defendant's intent might be attached.

There is no generic "crime" in our law. There are no common law crimes in our jurisdiction. Hawai'i Revised Statutes § 1-1 (1985) ("The common law of England is declared to be the common law of the State of Hawaii [Hawai'i] ... provided that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State."). In the absence of a proper instruction, there was no "crime" the jury could appropriately consider except terroristic threatening. Based on the law given it and the facts presented to it, the jury could only have convicted Defendant of burglary on the premise that the crime he intended to commit was terroristic threatening.

I would, therefore, remand the burglary charge for a new trial, also.