STATE OF HAWAII, Plaintiff-Appellee, *v.* CHARLES ALLEN, JR., CHESTER G. K. TAM, DENNIS YOSHIDA, Defendants-Appellants, and SHINSEI MIYASATO, Defendant

NO. 7679

CRIMINAL NO. 5348

DECEMBER 18, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT JUDGE WAKATSUKI IN PLACE OF ASSOCIATE JUDGE PADGETT, DISQUALIFIED

## OPINION OF THE COURT BY BURNS, J.

In this appeal of a conviction in a criminal case, we address the following issues:

1. Does the rule which says that a court-appointed counsel's failure to take an appeal for an indigent criminal defendant within the time allowed does not foreclose the right of the defendant to appeal apply to the situation where counsel is privately retained? In the circumstances of this case, our answer is yes.

2. After a complaint alleging a defendant to be guilty of a misdemeanor has been filed in district court but before arraignment, under Rule 5(b)(1), Hawaii Rules of Penal Procedure (HRPP), (a) may the State prosecute via indictment? and (b) after the indictment has been filed in circuit court and the defendant

waives jury trial, may the circuit court deny defendant's request to remand the case to district court for trial? We answer yes to both questions.

3. Did the police officer's affidavit contain sufficient information to justify the search warrant? We answer yes.

4. Did the circuit court err in concluding that defendants did not prove the affirmative defense of social gambling by a preponderance of the evidence? We answer no.

On September 9, 1978, the three appellants and defendant Miyasato were arrested, charged with gambling, released on bail, and scheduled to appear in the District Court of the Second Circuit for arraignment and plea on September 25, 1978. However, the district court proceedings were terminated when on September 20, 1978, the grand jury of the Second Circuit Court indicted all of them for gambling on September 8, 1978, and September 9, 1978, in violation of section 712-1223, Hawaii Revised Statutes (HRS) (1976). Gambling is a misdemeanor. HRS § 712-1223(2) (1976).

At all times in this case, appellants have been represented by attorneys selected and hired by them at their expense.

Prior to trial, the following motions were filed, heard, and denied: Defendants Charles Allen, Jr., Chester G. K. Tam, and Dennis Yoshida asked for a trial without jury and moved for a remand of the case to the District Court of the Second Circuit; all defendants moved to suppress all evidence seized by the Maui Police Department on September 9, 1978; Allen, Tam, and Yoshida moved to quash both the police officer's affidavit for a search warrant and the search warrant issued on September 9, 1978.

Trial was held on August 27, 1979.

On September 17, 1979, the trial judge entered findings of fact and conclusions of law finding Allen, Tam, and Yoshida guilty and Miyasato innocent because of failure to identify Miyasato "as being the defendant referred to in the indictment." A copy was given to counsel for all defendants.

The judgments of conviction of Allen, Tam, and Yoshida were filed on October 17, 1979.

On December 3, 1979, the trial judge sentenced Allen, Tam, and Yoshida each to a fine of $300.00 and probation for one year. They and their attorney were present at the sentencing. At the conclusion of the sentencing, their attorney asked, "At this time may we in open

court note an appeal?" The judge responded, "All right."[1]

Also on December 3, 1979, the trial judge signed and filed a "Judgment" in each of the three cases. The court clerk signed the lower portion of the judgment form indicating that notice thereof had been mailed or delivered to each party. In addition, someone typed on each form the following:

xc:  John Tam, Esq.
     Probation Dept.
     thru Prob. Dept.:  Ernest Y. Yamane,
     thru Prob. Dept.:  Esq., Defendant
     Fiscal Section

On December 20, 1979, Mr. Yamane filed one notice of appeal for his three clients, noting their appeal "from the Judgment entered on October 17, 1979, and Sentence entered in open court . . . on December 3, 1979."

## I.

Although appellants in their opening brief state that their notice of appeal "was timely filed on December 20, 1979," and although the State did not in its answering brief disagree with the appellants' statement,[2] we noticed the apparent noncompliance with Rules 37(b) and (c), HRPP,[3] and asked each party to file a memorandum on the jurisdictional question.

---

[1] Appellants' oral notice of appeal was ineffective because Rule 37(b), HRPP, requires that the notice of appeal shall be filed with the clerk.

[2] "The point discussed herein is not esoteric; it is basic and elementary. Yet, the prosecuting attorney did not call the matter to the attention of this court, and it remained for this court to notice it in the course of preparing for the hearing of the argument on appeal. A substantial amount of time of this court is taken in hearing criminal appeals. It is hoped that in the future the prosecuting attorney will be more diligent in noticing such matter, thus saving this court's time, as well as his own." *State v. Dawson*, 54 Haw. 400, 401, 507 P.2d 723, 724 (1973).

[3] Rule 37, HRPP, reads in part:

Rule 37. APPEAL.
\* \* \* \* \*
(b) Notice of Appeal. An appeal permitted by law from the circuit or district court to the supreme court and the intermediate court of appeals is taken by filing with the clerk of the court in which the judgment, sentence or

The State now contends that we do not have jurisdiction of the appeal. As expected, appellants contend that we do.

Appellants' memorandum was signed by Peter C. Labrador "for Ernest Y. Yamane." Attached to the memorandum was Mr. Labrador's affidavit in which he stated, *inter alia:* "That the first time that affiant or ERNEST Y. YAMANE received notice that judgment had been entered was when the Record on Appeal, filed on January 30, 1980, was received by this office. . . ."[4]

The appellants cite *State v. Delaney,* 56 Haw. 444, 540 P.2d 61 (1975), and contend that they should be excused because the clerk's violation of his duty under Rule 49(c), HRPP,[5] caused the late filing.

*Delaney* is not in point because it involved application of the Hawaii Rules of Criminal Procedure (HRCrP). This case involves

---

order was entered a notice of appeal in duplicate. The notice of appeal shall set forth the title of the case, the party or parties taking the appeal and shall designate the judgment, order, or part thereof, appealed from. The notice shall be signed by appellant or appellant's attorney or by the clerk if the notice is prepared by the clerk under Rule 32(b).

\* \* \*

(c) Time for Taking Appeal. The notice of appeal by a defendant shall be filed within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. \* \* \* Upon a showing of excusable neglect, the district or circuit court, as the case may be, may, before or after the time has expired with or without motion and notice, extend the time for filing the notice of appeal otherwise allowed to any party for a period not to exceed 30 days from the expiration of the original time prescribed by this section.

[4] Mr. Labrador can attest for himself; he cannot attest for Mr. Yamane.

[5] Rule 49(c), HRPP, reads:

RULE 49.  SERVICE AND FILING OF PAPERS.

\*    \*    \*    \*    \*

(c) *Notice of Orders.*  Immediately upon the entry of a judgment or an order made on a written motion subsequent to arraignment the clerk shall mail to each party a notice thereof and shall make a note in the docket of the mailing. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by Rule 37(c).

\*    \*    \*    \*    \*

application of the Hawaii Rules of Penal Procedure, which took effect as of January 1, 1977.

The Hawaii Rules of Penal Procedure differ from the Hawaii Rules of Criminal Procedure in two relevant respects:

1. Rule 37(e), HRCrP, barred recognition of a notice of appeal filed after sentencing but before entry of the judgment. *State v. Dawson,* 54 Haw. 400, 507 P.2d 723 (1973); *State v. Bulgo,* 45 Haw. 501, 370 P.2d 480 (1962). Rule 37(c), HRPP, specifically allows such premature filing.

2. Rule 49(c), HRCrP, did not provide as does Rule 49(c), HRPP, that "[l]ack of notice of the entry by the clerk does not affect the time to appeal. . . ."

Consequently, the Hawaii Supreme Court noted in *State v. Ferreira,* 59 Haw. 255, 580 P.2d 63 (1978):

When giving consideration to the proposed Rules of Penal Procedure in light of Delaney, it appeared to this court that the opportunity of a defendant under Rule 37(c) to file a notice of appeal at any time after announcement of a decision, sentence or order, without awaiting entry of the judgment or order, obviated the need to modify the stringency of Rule 49(c). . . .

*Id.* at 258.

However, in this case, a notice of appeal was filed within 30 days from the expiration of the original 10 days after entry of the judgment. Thus, if pursuant to HRPP, Rule 37(c), appellants' counsel is able to show "excusable neglect" and obtain from the circuit court a sufficient extension of time to cover his delay, then he will have cured the deficiency. Rule 37(c), HRPP, allows the request to be made during or after the aggregate 40-day period. *See United States v. Lucas,* 597 F.2d 243 (10th Cir. 1979).

In *Lucas,* the case was remanded to the trial court and appellants were allowed 30 days from the date of the opinion in which to file a motion for extension of time.

*Sua sponte* we see no point in this case in following the procedure specified in Rule 37(c) and applied in *Lucas.* For reasons hereinafter explained, we are not permitted to use this kind of a violation of our procedural appeal rules by an attorney for criminal defendants as a basis for dismissal of the appeal.

Although the United States Supreme Court started out trying to give the indigent the same right to counsel as is enjoyed by the

non-indigent, *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L. Ed.2d 1209 (1959), it is now at the point of trying to give to the non-indigent the same right to counsel as is enjoyed by the indigent. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L. Ed.2d 333 (1980).

According to our nation's highest court, the sixth amendment's right to counsel requirement is made obligatory on the states by the fourteenth amendment, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963); "inadequate assistance does not satisfy the Sixth Amendment right to counsel," *Cuyler v. Sullivan, supra,* 446 U.S. 335 at 344; and "a state criminal trial . . . is an action of the State within the meaning of the Fourteenth Amendment." *Id.* at 343.

*Cuyler* and *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L. Ed.2d 220 (1981), appear to impose a sixth amendment via the fourteenth amendment duty upon state trial judges to supervise some aspects of the performance of defendant's attorney at the trial court level, and *Entsminger v. Iowa,* 386 U.S. 748, 87 S.Ct. 1402, 18 L. Ed.2d 501 (1967), appears to impose a similar duty upon state appellate judges at the appellate level.

Thus, as interpreted by the United States Supreme Court, the sixth amendment currently reads as follows: "In all criminal prosecutions [at the pretrial, trial, and first appeal stages], the accused [indigent or non-indigent] shall enjoy the right . . . to have the [competent, adequate, and effective] Assistance of Counsel[6] for his [or her] defence [and trial and appeal judges are under some not-yet fully defined duties[7] to insure the accused's enjoyment of this

---

[6] "Effective counsel" is defined not as errorless counsel but as counsel whose assistance is within range of competence demanded of attorneys in criminal cases. *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978); *State v. Tyrrell,* 60 Haw. 17, 586 P.2d 1028 (1978); *State v. Kahalewai,* 54 Haw. 28, 501 P.2d 977 (1972); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L. Ed.2d 763 (1970; *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L. Ed.2d 785 (1970). Normally, however, defense counsel's tactical decisions at trial will not be questioned by a reviewing court. *State v. Onishi,* 64 Haw. 62, 636 P.2d 742 (1981).

[7] In *Cuyler, supra,* the court held that absent a request by one of the accused, a state trial judge need not inquire into the propriety of multiple representation unless he or she "knows or reasonably should know that a particular conflict exists. . . ." *Cuyler v. Sullivan, supra,* 446 U.S. 335 at 347. In *Wood, supra,* the court held that the *"possibility* of a conflict of interest was sufficiently apparent . . . to impose upon the court a duty to inquire further." *Wood v. Georgia, supra,* 450 U.S. 261 at 272.

right]."[8] (Footnotes added.)

In *Berman v. United States*, 378 U.S. 530 (1964), the United States Supreme Court held that a criminal defendant's appeal was barred because it was filed one day late. In *State v. Erwin*, 57 Haw. 268, 554 P.2d 236 (1976) (a case involving court-appointed counsel), the Hawaii Supreme Court held that a criminal defendant's appeal was not barred even though it was filed one day late.

We think *Cuyler* requires us to give the appellants in this case the benefit of *Erwin*. Although privately retained counsel's acts are not state acts and although the trial court may not have any duty to prevent privately-retained counsel from failing to file a timely notice of appeal, a state court's decision refusing to allow the defendant in this case the benefit of *Erwin* is a state action which *Cuyler* prohibits.[9]

We hold that appellants' counsel's seven-day failure to comply with the time requirements of Rule 37(c), HRPP, does not preclude appellants' right to appeal. Thus, we have jurisdiction to hear this appeal.

## II.

Appellants argue that once a misdemeanor complaint is filed and the defendant is arrested and released on bail pending arraignment and plea, then he or she has a right to be prosecuted by complaint rather than by indictment. We disagree.

Rule 7(a), HRPP,[10] allows misdemeanors to be prosecuted by

---

[8] The current intepretation appears to encourage counsel (1) to stray from the range of competence demanded of attorneys in criminal cases so as to give his or her client grounds for reversal on appeal just in case the verdict goes the wrong way; and (2) to pursue frivolous appeals. As suggested in *Flanagan v. Henderson*, 496 F.2d 1274 (5th Cir. 1974), the only remedy appears to be disciplinary measures against the attorney. *See* Wolf, *Attorney's Negligent Failure to Comply with Procedural Deadlines and Court Calendar Orders – Sanctions*, 47 TEXAS L. REV. 1198 (June 1969).

[9] The court clerk's failure to perform his duty under Rule 49(c), HRPP, is also a state action.

[10] Rule 7(a), HRPP, reads:

### III. THE CHARGE
\* \* \* \* \*
Rule 7. THE INDICTMENT, COMPLAINT AND ORAL CHARGE.
\* \* \* \* \*
(a) Use of Indictment, Complaint or Oral Charge. The charge against a defendant is an indictment, a complaint or an oral charge filed in court. A

complaint, oral charge, or indictment. Nothing in the rules prohibits prosecution by indictment after the process of prosecution by complaint has commenced but before arraignment and plea or before jeopardy has attached.[11] In our view, such matters are to be decided by the prosecutor, not the court.

Appellants also argue that Rule 5(b)(4), HRPP,[12] mandates remand of their cases to district court for trial. Again, we disagree. The indictment was properly before the circuit court[13] and Rule 5(b)(3), HRPP, says that "if trial by jury is waived in the circuit court, the proceedings may be remanded to the district court for disposition." Consequently, the decision to remand is discretionary, not mandatory. *Cf. State v. Villados,* 55 Haw. 394, 520 P.2d 427 (1974).

## III.

Appellants argue that the officer's affidavit in support of the search warrant did not satisfy the requirements of *State v. Decano,* 60

---

felony shall be prosecuted by an indictment or, if indictment is waived, it may be prosecuted by a complaint. Any other offense may be prosecuted by an indictment, a complaint, or an oral charge.

\* \* \* \* \*

[11] In a nonjury trial, jeopardy attaches when the court begins to hear evidence. *Serfass v. United States,* 420 U.S. 377 (1974). In a jury trial, jeopardy attaches when a jury is impaneled and sworn. *Downtown v. United States,* 372 U.S. 734 (1963); *Illinois v. Somerville,* 410 U.S. 458 (1973). These rules apply to the states. *Crist v. Bretz,* 437 U.S. 28 (1978).

[12] Rule 5(b)(4), HRPP, reads:

II. PROCEEDINGS IN THE DISTRICT COURT

\* \* \* \* \*

Rule 5. PROCEEDINGS BEFORE THE DISTRICT COURT.

\* \* \* \* \*

(b) Offenses Other Than Felony.
(4) *Trial.* A defendant who shall plead not guilty and is not entitled to or shall have waived his right to trial by jury shall be tried in the district court.

[13] Rule 7(g)(1), HRPP, reads:
Rule 7. THE INDICTMENT, COMPLAINT AND ORAL CHARGE.

\* \* \* \* \*

(g) Court in Which Charge Filed.
(1) An indictment shall be filed in the circuit court.

\* \* \* \* \*

Haw. 205, 588 P.2d 909 (1978); *State v. Kaukani*, 59 Haw. 120, 577 P.2d 335 (1978); *State v. Delaney*, 58 Haw. 19, 563 P.2d 990 (1977). We disagree.

The affidavit indicates that first the officer received a reliable tip and then he and fellow officers conducted an investigation which revealed facts constituting probable cause that on the night the affidavit was executed, gambling was occurring within the dwelling sought to be searched.

Appellants further argue that the officer's admission in his affidavit that during the second of six separate night surveillances the officers used binoculars to help them see into the dwelling constitutes an admission of an illegal warrantless search.

The issue is whether the appellants' activities were exposed to public view by the naked eye. *State v. Ward*, 62 Haw. 509, 617 P.2d 568 (1980). The viewing was done prior to the issuance of a warrant. Consequently, the State at the trial court level had the burden of establishing that what they saw with the binoculars could be seen with the naked eye. *State v. Dias*, 62 Haw. 52, 609 P.2d 637 (1980); *State v. Rosborough*, 62 Haw. 238, 615 P.2d 84 (1980).

At the appellate level the appellants have the burden of showing in the record that the trial court erred. *State v. Hashimoto*, 46 Haw. 183, 377 P.2d 728 (1962). We have no way of determining whether the trial court erred or not because the transcript of the hearing on the motion to suppress was not made part of the record on appeal. However, in light of our discussion in part I, *supra*, we are probably not allowed to hold the appellants' counsels' failure to provide us with a transcript against the appellants.

Assuming the information that was obtained by use of the binoculars was improperly obtained, the issue is whether the remainder of the affidavit was sufficient to obtain a warrant. If so, the warrant's validity is not affected. 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Federal Rules of Criminal Procedure* § 670 (1969).

The affidavit, which contains all of the facts in the record relevant to this issue, states, *inter alia*, that on August 18, 1978, and on September 8, 1978, the police received tips from reliable confidential informers about Allen's crap game at Miyasato's house; that they conducted surveillances on August 18, 19, 25, and 26, 1978, and on September 8, and 9, 1978; that during at least one of their surveillances, they "could hear the sound associated with the pounding

of a dice cup (a hollow thumping) and the sound associated with the rolling of dice across a homemade crap table (a hollow, rapid staccato sound)"; and that many of the cars parked at or near Miyasato's house during the surveillances were registered to known gamblers.

The affidavit states that the binoculars were used during the surveillance conducted on August 25, 1978, and they were used only to see a hanging lamp shade and a part of a bamboo croupier's stick during those times when it was held in an upright position.

We conclude that excluding the information obtained by use of the binoculars, the remainder of the information in the affidavit was sufficient to justify the warrant.

Appellants further argue that the affidavit does not recite facts constituting probable cause because "nowhere therein is there stated that something of value is being staked or risked." We disagree.

The affidavit states facts in support of the informant's tip that a "crap game was being held" at the dwelling. "Craps" is a gambling game which involves bettors, some of whom win and some of whom lose.

### IV.

Appellants argue that there is no substantive evidence that this was anything but social gambling as permitted by HRS § 712-1231 (1976). We disagree.

Social gambling is an affirmative defense which must be proved by a preponderance of the evidence. HRS § 712-1231 (1976). One of the six facts that must be proved is that "[n]o player receives . . . anything of value . . . other than his personal gambling winnings. . . ." HRS § 712-1231(a)(2) (1976).

In this case some of the players testified that they helped themselves to cigarettes, juice, and beer, which were available in the residence, without paying and without anybody demanding payment. Clearly some players received something of value other than their personal gambling winnings.[14]

---

[14] They also "received" the use of the residence, its furnishings, water, electricity, etc. Query whether the receipt of the right to use those items constitutes the receipt of "anything of value."

Further, some of the players did not testify and there is no testimony or evidence that they did not receive something of value other than their personal gambling winnings.

Another of the six facts that must be proved is that "[n]o other person . . . receives or becomes entitled to receive, anything of value or any profit, directly or indirectly, from any source. . . ." HRS § 712-1231(a)(3) (1976).

The evidence shows that on September 9, 1978, Arisumi, Ogasawara, Shimada, DeCoite, Kimura, Allen, and Tam were players; that Yoshida was the "stick man"; and that the dwelling in which they were playing was owned by a person named Miyasato (who was not proven to be defendant Miyasato).

The evidence also shows that on September 8, 1978, Kakugawa, Ogasawara, DeCoite, Allen, and Tam were players and Yoshida was the "stick man."

Kakugawa, Arisumi, Ogasawara, Shimoda, and DeCoite testified as witnesses for the State that they did not pay anything of value to any person other than other players. However, the defense did not call any witnesses and Allen, Tam, Yoshida, Miyasato, and the owner of the residence did not testify. We do not know whether any of them paid anything of value to any other person, and we do not know whether the non-players among them received anything of value. In such circumstances we agree with the lower court that the appellants failed to prove that no person other than the players received or became entitled to receive anything of value.

Affirmed.

*Peter C. Labrador* for appellants.

*Artemio C. Baxa,* Deputy Prosecuting Attorney, County of Maui, for appellee.