25 P.3d 792

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Gordon Lee APLACA, Defendant–Appellant.**

No. 21879.

Supreme Court of Hawai'i.

June 13, 2001.

18

Michael G.M. Ostendorp, on the briefs, Honolulu, for the defendant-appellant, Gordon Lee Aplaca.

Bryan K. Sano (Deputy Prosecuting Attorney), on the briefs, for the plaintiff-appellee, State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge KOCHI, assigned by reason of vacancy.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Gordon Lee Aplaca appeals from the judgment of the first circuit court, the Honorable Richard K. Perkins presiding, convicting him of and sentencing him for the offense of attempted murder in the second degree, in violation of Hawai'i Revised Statutes (HRS) §§ 707–701.5 (1993)[1] and 705–500 (1993),[2] filed on July 10, 1998. On appeal, Aplaca asserts that the circuit court erred in denying his motion for judgment of acquittal and abused its discretion in denying his motion for a new

trial because the record, even when viewed in the light most favorable to the prosecution, does not contain substantial evidence supporting a conclusion regarding "the issue of identity." Aplaca also contends that, inasmuch as "[a]ttempted [m]urder of a child under 8 years old is an unclassified felony," it must be "treated as a Class C felony" for "sentencing purposes" and, thus, that the circuit court erred in sentencing him, pursuant to the enhancements set forth in HRS § 706–660.2 (1993),[3] to a fifteen-year, rather than a twenty-month, mandatory minimum term of imprisonment.

Aplaca's points of error are without merit. However, we take this opportunity to clarify that the sentencing error identified in *State v. Tafoya*, 91 Hawai'i 261, 271, 982 P.2d 890, 900 (1999) (holding that the jury, and not the sentencing judge, must find the "intrinsic" facts requisite to enhancing a sentence pursuant to HRS § 706–660.2) is subject to harmless error analysis. Accordingly, we hold that, although the circuit court erred in failing to submit to the jury the questions whether the victim in the present matter— *i.e.*, Aplaca's daughter, Katiana—was eight years of age or younger and whether Aplaca

1. HRS § 707–701.5 provides in relevant part that, "[e]xcept as provided in [HRS § ] 707–701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person." Second degree murder is "a felony[.]" HRS § 707–701.5(2).

2. HRS § 705–500 provides as follows:
 **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
 (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
 (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
 (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

 (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.
 Pursuant to HRS § 705–502 (1993), "[a]n attempt to commit a crime is an offense of the same class and grade as the most serious offense which is attempted."

3. HRS § 706–660.2 provides in relevant part that,
 [n]otwithstanding [HRS § ] 706–669 [(1993 & Supp.2000)], a person who, in the course of committing or attempting to commit a felony, causes the death or inflicts serious or substantial bodily injury upon a person who is:
 . . . .
 (3) [e]ight years of age or younger; and such disability is known or reasonably should have been known to the defendant, shall, if not subjected to an extended term of imprisonment pursuant to [HRS § ] 706–662 [(1993 & Supp. 2000)], be sentenced to a mandatory minimum term of imprisonment without the possibility of parole as follows:
 (1) For murder in the second degree—fifteen years;
 . . . .
 (4) For a class C felony—one year, eight months.

knew or reasonably should have known that she was under eight years of age, *see id.* at 271, 982 P.2d at 900 ("findings regarding (a) the age ... of the victim and (b) whether '[s]uch disability is known or reasonably should be known to the defendant' entail 'intrinsic facts' " that "the Hawai'i Constitution[4] requires ... be made by the trier of fact") (some brackets in original), the error was harmless beyond a reasonable doubt. We therefore affirm Aplaca's conviction and enhanced sentence.

## I. *RELEVANT BACKGROUND*

By complaint, Aplaca was charged, *inter alia,* with attempted murder in the second degree in relevant part as follows:

> On or about the 18th day of June, 1997, in the City and County of Honolulu, State of Hawaii, [Aplaca], being the parent, guardian, or any other person having legal or physical custody of [Katiana], a person less than eighteen years (18) of age, did intentionally engage in conduct which is a substantial step in a course of conduct intended or known to cause the death of [Katiana], ... thereby committing the offense of Attempted Murder in the Second Degree, ... and [Katiana] was eight years (8) of age or younger, thereby subjecting [Aplaca] to the penalty provisions of Offenses Against Children pursuant to [HRS §§ ] 706–662(5) [(1993)] and 706–660.2[.]

After a jury returned a general verdict finding Aplaca guilty of attempted second degree murder, the circuit court imposed a sentence of life with the possibility for parole, enhanced, pursuant to HRS § 706–660.2, by the imposition of a mandatory minimum term of fifteen-years' incarceration. The jury, however, made no findings regarding Katiana's age or whether her age was known or reasonably should have been known to Aplaca.

With regard to Aplaca's claims arising out of the circuit court's denial of his motions for judgment of acquittal and for a new trial, the following facts are pertinent. On June 17,

1997, Katiana–Marie Kapuaililani Aplaca (Katiana), a two-month old child, was examined by Arlene Myers, M.D., during a routine medical check-up; Dr. Myers found her to be "fine," aside from a nonmalignant tumor on her neck, with which she had been born. The following day, however, Robert J. Brumblay, M.D., treated Katiana in the emergency room of Wahiaw; a General Hospital (WGH). Katiana's injuries included multiple fractures in her skull and ribs, bleeding in some parts of her brain, a cut inside her upper lip, and faint bruises on her neck that were consistent with finger impressions.

Katiana was transferred to the pediatric intensive care unit of Kapi'olani Medical Center (KMC). Donald Christian Derauf, M.D., qualified at Aplaca's trial as an expert in the fields of pediatrics and child abuse, examined Katiana on June 19, 1997 at KMC. In his opinion, Katiana was unquestionably abused and suffered from shaken impact syndrome, which usually occurs when "an adult grabs the [infant's] chest ... with his—or her hand around the chest then shakes the baby by the chest back and forth." Dr. Derauf testified that, in his opinion, Katiana's skull fractures were not caused by shaking but, rather, by an impact greater than that which would be caused by a typical fall. Dr. Derauf elaborated on the extent of Katiana's injuries and explained that x-ray examinations revealed that she had sustained several fractures to her ribs, which were inflicted at various times, a fracture to her third lumbar vertebra, a subdural hematoma to and swelling of the brain that pressured the base of her skull, retinal and abdominal bleeding, and a severed frenum, which is a fold of mucous membrane on the inside of the middle upper lip, connecting the lip to the gums. Dr. Derauf testified that Katiana's acute injuries had been inflicted no more than twelve hours before she arrived at WGH.

Similarly, Robert Bart, M.D., who examined Katiana on June 18, 1997, testified that her acute injuries were inflicted within twelve hours of her arrival. Moreover, Dr.

---

4. The pertinent provisions of the Hawai'i Constitution are article I, section 14, which provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury" and article I, section 5, which provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law[.]" *See Tafoya,* 91 Hawai'i at 272 & n. 12, 982 P.2d at 901 & n. 12.

Bart testified that, based upon his examination of Katiana and in his opinion: (1) something had hit her or she had been struck against something a minimum of three times, resulting in three skull fractures; (2) someone had violently shaken her, resulting in fractured ribs and retinal bleeding; and (3) the force with which she was shaken had been equivalent to what would be experienced by an infant, who was not restrained by a seat belt, in a fifty to sixty mile-per-hour car accident or, alternatively, by an infant being dropped from a ten-foot height three times.

Katiana's mother, Amy, testified that, sometime after midnight on June 18, 1997, Katiana had begun to cry and that Aplaca had picked Kátiana up and taken her and her bottle out of the bedroom and into the living room. Katiana's crying increased, soon after which Aplaca returned to the bedroom, placed Katiana in her crib, and laid down in bed. Katiana once again began to cry. Aplaca jumped up and "jerked" Katiana's crib, causing it to strike the bottom of a cupboard that was located approximately two or three inches above the crib, which caused Katiana's crying to increase still more. Aplaca then lifted Katiana by her arms and began to "vibrate her in his arms." According to Amy, Aplaca appeared "very tired and frustrated," and when she inquired what was wrong, he said, "I cannot get her to stop crying." Amy also testified that "the night before [Katiana] went to the hospital," Aplaca had stated that "he hated [Katiana] and wished she were dead."

At the close of the prosecution's case-in-chief, the circuit court denied Aplaca's motion for judgment of acquittal. After testifying, *inter alia*, that he was Katiana's father, that she was a "newborn," and that he had not harmed or shaken her, Aplaca rested his own case and renewed his motion for judgment of acquittal, which the circuit court again denied. Subsequent to the jury's verdict finding him guilty, but prior to being sentenced, Aplaca filed a written motion for judgment of acquittal or, in the alternative, for a new trial, which was impliedly denied when the circuit court sentenced Aplaca to life imprisonment with the possibility of pa-

role, enhanced by a mandatory minimum term of fifteen-years' incarceration.

## II. *STANDARDS OF REVIEW*

### A. *Motion For Judgment Of Acquittal*

 When reviewing a . . . motion for judgment of acquittal,

> we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weight the evidence, and draw justifiable inferences of fact.

*State v. Jhun*, 83 Hawai'i 472, 481, 927 P.2d 1355, 1364 (1996) (citations and internal quotation marks omitted).

*State v. Jenkins*, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000) (quoting *State v. Timoteo*, 87 Hawai'i 108, 112–13, 952 P.2d 865, 869–70 (1997)).

### B. *Motion For A New Trial*

 As a general matter, the granting or denial of a motion for a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. . . . An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant. . . .

*State v. Lee*, 90 Hawai'i 130, 134, 976 P.2d 444, 448 (1999) (citations and internal quotation signals omitted).

### C. *Sentencing*

■ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *Jenkins*, 93 Hawai'i at 100, 997 P.2d at 26 (citations and internal quotation signals omitted).

### D. *Constitutional Law*

■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *Jenkins*, 93 Hawai'i at 100, 997 P.2d at 26 (citations omitted).

### E. *Statutory Interpretation*

■ "[T]he interpretation of a statute ... is a question of law reviewable *de novo*." ... *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied*, 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata*, 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied*, 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). *Gray v. Administrative Director of the Court, State of Hawai'i*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> . . . .

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (ellipsis points in original)).

### F. *Plain Error*

■ "We may recognize plain error when the error committed affects substantial rights of the defendant." *Jenkins*, 93 Hawai'i at 101, 997 P.2d at 27 (citations omitted). However, whether to recognize error that has not been raised by trial counsel, appellate counsel, or both, as plain error warranting reversal is, ultimately, discretionary. *See* HRPP Rule 52(b) (2000) ("Plain errors or defects affecting substantial rights *may* be noticed although not brought to the attention of the court." (Emphasis added.)). Accordingly, we have observed that

> our power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993) (cited in *State v. Arceo*, 84 Hawai'i 1, 34, 928 P.2d 843, 876 (1996) (Nakayama J., dissenting)). In this vein, we will deem harmless beyond a reasonable doubt, and therefore disregard, "any error, defect, irregularity[,] or variance" that "does not affect [the] substantial rights" of a defendant. HRPP Rule 52(a) (2000).

### III. *DISCUSSION*

As an initial matter, we address the prosecution's assertion that this court lacks jurisdiction to entertain Aplaca's appeal. Indeed, Aplaca's notice of appeal was untimely filed by his first appellate counsel on September 3, 1998, judgment of conviction and sentence having been filed on July 10, 1998. However, Aplaca is "entitled, on his first appeal, to effective counsel who may not deprive him of his appeal by failure to comply with procedural rules," *State v. Knight,* 80 Hawai'i 318, 323–24, 909 P.2d 1133, 1138–39 (1996) (citing *State v. Erwin,* 57 Haw. 268, 270, 554 P.2d 236, 237 (1976)), such as Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b), which requires that the notice of appeal be filed within thirty days after the entry of the judgment or order appealed from. In light of the foregoing, the failure of Aplaca's counsel to timely file the notice of appeal does not divest Aplaca of his right to appeal, and, therefore, in the interests of justice, we decline to dismiss Aplaca's appeal and retain jurisdiction over it. *See Knight,* 80 Hawai'i at 324, 909 P.2d at 1139 (in which, in the interests of justice, jurisdiction was retained despite untimely filing of notice of appeal); *cf. State v. Allen,* 2 Haw.App. 606, 613, 638 P.2d 338, 344 (1981) (failure to comply with time requirements of Hawai'i Rules of Penal Procedure Rule 37(c) did not preclude appeal).

### A. *The Circuit Court Neither Erred In Denying Aplaca's Motion For Judgment Of Acquittal Nor Abused Its Discretion In Denying His Motion For A New Trial.*

Aplaca contends that the circuit court erred in denying his motion for judgment of acquittal and abused its discretion in denying his motion for a new trial because, "even in the light most favorable to the [prosecution], no substantial evidence was presented on the issue of identity." It is well settled that this court will not pass on issues dependent upon the credibility of witnesses nor the weight of the evidence as determined by the trier of fact. *See, e.g., Jenkins,* 93 Hawai'i at 100–01, 997 P.2d at 26–27 (quoting *Tsugawa v. Reinartz,* 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974) ("verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings"), and *State v. Buch,* 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) ("an appellate court will not pass upon issues dependent upon the credibility of the witnesses and the weight of the evidence; this is the province of the [trier of fact])").

Aplaca testified that he neither shook nor hurt Katiana. However, the prosecution adduced evidence, *inter alia,* that Katiana's injuries were caused either by being shaken or by being impacted with significant force by an object, that her injuries were inflicted within twelve hours of her admission to the hospital, and that, within the relevant time-frame, Aplaca had violently shaken Katiana's crib and had also shaken Katiana by the arms. Accordingly, the record is not devoid of substantial evidence supporting the conclusion that Aplaca inflicted Katiana's injuries. That there was conflicting testimony on the subject is of no benefit to Aplaca, inasmuch as it is the province of the trier of fact, and not an appellate court, to determine the credibility of witnesses and to assess the weight and effect of the evidence adduced at trial. *Jenkins,* 93 Hawai'i at 100–01, 997 P.2d at 26–27; *Buch,* 83 Hawai'i at 321, 926 P.2d at 612. We therefore hold that the circuit court neither erred in denying Aplaca's motion for judgment of acquittal nor abused its discretion in denying his motion for a new trial.

### B. *Attempted Second Degree Murder Is Not An "Unclassified" Offense For Purposes Of Sentencing And Is Not To Be Treated As A Class C Felony Under HRS § 706–660.2.*

Relying on *State v. Soto,* 84 Hawai'i 229, 933 P.2d 66 (1997), and *State v. Kaakimaka,* 84 Hawai'i 280, 933 P.2d 617 (1997), Aplaca argues that, inasmuch as "[a]ttempted [m]urder of a child under 8 years old is an unclassified felony," it must be "treated as a Class C felony" for "sentencing purposes" and, thus, that the circuit court erred in sentencing him, pursuant to the enhancements set forth in HRS § 706–660.2, *see supra* note 3, to a fifteen-year, rather than a

twenty-month, mandatory minimum term of imprisonment.

HRS § 706–610 (1993)[5] draws a distinction among "classified" felonies, first and second degree murder and attempted first and second degree murder, and "crime[s] declared to be a felony[ ] without specification of class"; it also makes clear that offenses are classified for purposes of sentencing. HRS § 706–660.2, see supra note 3, expressly differentiates, for purposes of sentencing, between the offense of second degree murder and class A, B, and C felonies. Inasmuch as "[a]n attempt to commit a crime is an offense of the same class and grade as the . . . offense which is attempted," HRS § 705–502, see supra note 2, and second degree murder committed under the "aggravated circumstances" set forth in HRS § 706–660.2, see supra note 3, is expressly distinguished from classified felonies and, pursuant to HRS § 706–610, see supra note 6, from unclassified felonies, it therefore follows that attempted second degree murder committed under the aggravated circumstances set forth in HRS § 706–660.2 is punishable by a mandatory minimum term of imprisonment of fifteen years, which is the minimum sentence prescribed for second degree murder. Thus, attempted second degree murder is not an "unclassified" offense for purposes of sentencing and is not treated as a class C felony pursuant to HRS § 706–660.2.

### C. The Tafoya Error In The Present Case Was Harmless Beyond A Reasonable Doubt.

Although Aplaca's enhanced sentence is not reversible for the reasons he advances, we nonetheless, in the exercise of our discretion, address the question whether the circuit court complied with the procedure mandated in State v. Tafoya, 91 Hawai'i 261, 982 P.2d 890 (1999), and, if not, whether the failure to do so was harmless beyond a reasonable doubt. At the same time, we realize that Tafoya had not been handed down at the time the circuit court sentenced Aplaca or by the time appellate briefing was complete in this matter, and so we fault neither the circuit court nor Aplaca's counsel, appellate or trial, for failing to raise the issue.

Our analysis in Tafoya, relevant to the present appeal, began with an articulation of the rule that,

> if . . . "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, intrinsic to the "commission of the crime charged," then . . . such aggravating circumstances "must be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact.

Tafoya, 91 Hawai'i at 270, 982 P.2d at 899 (quoting State v. Schroeder, 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994)) (some emphasis added, some deleted, and some in original) (citing State v. Estrada, 69 Haw. 204, 738 P.2d 812 (1987)). We then announced the following holdings, which are key to a correct resolution of the question whether the circuit court erred in its application of HRS § 706–660.2:

> [W]e hold that findings regarding (a) the age . . . of the victim and (b) whether "[s]uch disability is known or reasonably should be known to the defendant" entail "intrinsic" facts. These findings are inextricably enmeshed in the defendant's actions in committing the offense charged. . . . [W]e hold today that the Hawai'i Constitution requires that these findings be made by the trier of fact. . . .
>
> Our decision today, as is implicit in our previous decisions, rests upon the necessi-

5. HRS § 706–610 provides in relevant part as follows:

> **Classes of felonies.** (1) Apart from first and second degree murder and attempted first and second murder, felonies defined by th[e Hawai'i Penal Code (HPC)] are classified, for the purpose of sentence, into three classes, as follows:
> (a) Class A felonies;
> (b) Class B felonies; and
> (c) Class C felonies.
> A felony is a class A, class B, or class C felony when it is so designated by th[e HPC]. Except for first and second degree murder and attempted first and second degree murder, a crime declared to be a felony, without specification of class, is a class C felony.

*ty of upholding a defendant's constitutional rights to trial by jury and procedural due process. . . .*

*. . . .*

*. . . [I]t is an impermissible dilution of the jury's role as factfinder to remove the responsibility for determining the existence of facts leading to the imposition of a particular punishment. . . . We hold that when a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determinations be made by the trier of fact. The legislature may not dilute the historical province of the jury by relegating facts necessary to the imposition of a certain penalty for criminal behavior to the sentencing court. The jury is the body responsible for determination of intrinsic facts necessary for the imposition of punishment for an offense criminalized by the legislature. The analysis in Schroeder protects the jury's role by mandating that the determination of facts intrinsic to the offense be made by the trier of fact.*

*Tafoya*, 91 Hawai'i at 271–73, 982 P.2d at 900–02 (emphases added) (some brackets added and some in original). Because, in *Tafoya*, the necessary findings regarding the victim's age and the defendant's requisite state of mind with respect to that age had not, as constitutionally required, been made by the jury—but, rather, had been made by the sentencing judge—, we reversed the imposition of the defendant's enhanced sentence and remanded the matter for resentencing without enhancement. *Id.* at 275, 982 P.2d at 904.

 Applying the foregoing principles to this case, it is clear that the circuit court erred in failing to submit the question of Katiana's age (and Aplaca's knowledge of her age) to the jury. However, "[e]rror is not to be viewed in isolation [or] considered purely in the abstract." *State v. Gano*, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (citations omitted). Recognizing as much, this court applies the harmless error doctrine to errors

that occur in the trial process, including those that implicate an accused's constitutional rights. *See State v. Ford*, 84 Hawai'i 65, 74, 929 P.2d 78, 87 (1996). Consistent with the harmless error doctrine, we have frequently stated that error "must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled. In that context, the real question becomes whether there is a reasonable possibility that the error might have contributed to *conviction.*" *Gano*, 92 Hawai'i at 176, 988 P.2d at 1168 (citations omitted) (emphasis added). The fact that the error, in this case, implicates Aplaca's sentence and not his conviction does not render the harmless error doctrine inapplicable.[6] To the contrary, HRS § 641-16 (1993) expressly states that "[n]o order, judgment, or *sentence* shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant." (Emphasis added). In addition, HRPP Rule 52, which provides that "[a]ny error, defect, irregularity[,] or. variance which does not affect substantial rights *shall* be disregarded[,]" is applicable to all penal proceedings, including sentencing. (Emphasis added.) *See* HRPP Rule 54(a) (2000) ("These rules shall apply to all penal proceedings in all courts of the State of Hawai'i except as provided in subsection (b) of this rule."). Moreover, the United States Supreme Court has stated that most constitutional errors, including those at sentencing, can be harmless. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

Further support for the proposition that errors such as the one committed here are subject to harmless error review is found in *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Neder*, the United States Supreme Court addressed whether the omission of an entire element of an offense from jury determination is subject to harmless error analysis. The Court held that such an omission "does not *necessarily* render a criminal trial fundamentally unfair

---

**6.** As we have indicated, because in this case the error implicated the sentence and not the conviction, the appropriate analysis is to determine

whether there is a reasonable possibility that the error might have contributed to the *sentence. Cf. Gano*, 92 Hawai'i at 176, 988 P.2d at 1168.

or an unreliable vehicle for determining guilt or innocence" that would preclude harmless error analysis. 527 U.S. at 9, 119 S.Ct. 1827 (emphasis added). The majority in *Neder* further explained that those constitutional errors that "defy harmless-error review" do so only because they contain a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." 527 U.S. at 7–9, 119 S.Ct. 1827 (citations omitted). Examples of the "limited class of cases" in which structural defects are subject to automatic reversal are: complete denial of counsel; biased trial judge; racial discrimination; denial of self-representation at trial; denial of a public trial; and defective definition of reasonable doubt. *Id.* at 8, 119 S.Ct. 1827. "Put another way, these errors deprive defendants of basic protections, without which a criminal trial cannot reliably serve its function as a vehicle for a determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair." *Id.* at 8–9, 119 S.Ct. 1827 (citations and internal quotation signals omitted). Ultimately, the *Neder* Court held that the failure to instruct the jury on the essential element of materiality, over the objection of the defendant, was harmless where there was uncontroverted evidence that the defendant had failed to report $5,000,000 of income. *Id.* at 19–20, 119 S.Ct. 1827.

 Analogously, in this case, the essential sentencing factor, constitutionally required to be found by the jury, was not submitted to the jury. However, as was the case in *Neder*, the failure to instruct the jury to determine whether the infant victim was under the age of eight and whether Aplaca knew it, or should have known it, was harmless beyond a reasonable doubt. Aplaca received a fair trial before an impartial judge under the correct standard of proof with the assistance of counsel, a fairly selected impartial jury was instructed to consider all of the evidence and argument, and Aplaca was convicted. We affirm that conviction. Aplaca was then sentenced to a mandatory minimum term, pursuant to HRS § 706–660.2, because the circuit court found that Katiana was under the age of eight and that Aplaca knew that she was. That this sentencing factor was not determined by the jury, standing alone, does not render the framework of Aplaca's trial or sentence fundamentally unfair. *Cf. Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827. In other words, the procedural error committed by the circuit court in applying HRS § 706–660.2 is not the type of structural defect that requires automatic reversal. *Cf. id.* at 8, 119 S.Ct. 1827. Rather, it is analogous to an omission of an element in jury instructions. *Cf. id.* at 10, 119 S.Ct. 1827 (recognizing that improperly omitting an element from a jury instruction can "easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless error analysis") (quoting *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). As such, we must consider the omission in the light of the entire record to evaluate whether there was a reasonable possibility that the error affected the outcome, which in this case is the enhanced sentence that the circuit court imposed upon Aplaca.

There is no question that the error was indeed harmless in the present matter. At trial, the omitted sentencing factor was supported by uncontroverted evidence that Katiana, Aplaca's infant daughter, was under the age of eight. Aplaca never suggested at trial nor on appeal that Katiana was more than eight years old or that he was unaware of his daughter's infancy. Rather, when asked whether "[Katiana] was a newborn," Aplaca responded affirmatively. Moreover, throughout his testimony, he repeatedly referred to her as a baby. Aplaca admitted that his daughter was an infant. Consequently, there are no facts from which the jury could reasonably have concluded that Katiana was (or that her father believed she was) over the age of eight; nor is there any suggestion that any such facts could be adduced.

On the facts of this case, it is clear beyond a reasonable doubt that the sentence would have been no different even if the jury had been required to make a specific finding that Katiana was eight years old or younger and that her father knew it or should have known it. Accordingly, there is no reasonable possibility that the circuit court's error contributed to Aplaca's sentence. As such, we hold

that the error was harmless beyond a reasonable doubt.[7]

## IV. CONCLUSION

In light of the foregoing, we affirm the circuit court's judgment of conviction and sentence, filed on July 10, 1998.

---

7. Notwithstanding the facts of this case, we believe that the failure to submit an entire element of an offense or sentence to the jury would ordinarily constitute reversible error because, in most cases, such an omission would likely create a reasonable possibility that the jury did not find that that element was established beyond a reasonable doubt. We further believe that a narrow or strict application of the harmless error rule appropriately protects a defendant's rights and the integrity of the trial process.