STATE OF HAWAI`I, Plaintiff-Appellee,
v.
ROBERT ANTHONY TANGELDER, Defendant-Appellant.
No. 28806
Intermediate Court of Appeals of Hawaii.
September 4, 2008.
On the briefs:
Christian Enright, deputy public defender, State of Hawai`i, for defendant-appellant.
Justin F. Kollar, deputy prosecuting attorney, County of Kaua`i, for plaintiff-appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding J., NAKAMURA, and LEONARD, J.
Defendant-Appellant Robert Anthony Tangelder (Tangelder) appeals the Judgment filed on September 18, 2007 in the Family Court of the Fifth Circuit (family court),[1] convicting him of violating a temporary restraining order (TRO), in violation of Hawaii Revised Statutes (HRS) § 586-4 (2006), which states, in relevant part:
Temporary restraining order.
. . . .
(e) When a temporary restraining order is granted and the respondent or person to be restrained knows of the order, a knowing or intentional violation of the restraining order is a misdemeanor. A person convicted under this section shall undergo domestic violence intervention at any available domestic violence program as ordered by the court. The court additionally shall sentence a person convicted under this section as follows:
(1) For a first conviction for violation of the temporary restraining order, the person shall serve a mandatory minimum jail sentence of forty-eight hours and be fined not less than $150 nor more than $500; provided that the court shall not sentence a defendant to pay a fine unless the defendant is or will be able to pay the fine; and
(2) For the second and any subsequent conviction for violation of the temporary restraining order, the person shall serve a mandatory minimum jail sentence of thirty days and be fined not less than $250 nor more than $1,000; provided that the court shall not sentence a defendant to pay a fine unless the defendant is or will be able to pay the fine.
Upon conviction and sentencing of the defendant, the court shall order that the defendant immediately be incarcerated to serve the mandatory minimum sentence imposed; provided that the defendant may be admitted to bail pending appeal pursuant to chapter 804. The court may stay the imposition of the sentence if special circumstances exist.
The court may suspend any jail sentence, except for the mandatory sentences under paragraphs (1) and (2), upon condition that the defendant remain alcohol and drug-free, conviction-free, or complete court-ordered assessments or intervention. Nothing in this section shall be construed as limiting the discretion of the judge to impose additional sanctions authorized in sentencing for a misdemeanor.
On appeal, Tangelder's sole contention is that the family court plainly erred in convicting him of violation of a TRO because "no substantial evidence was presented at trial to support such a conclusion." Tangelder specifically argues that "no substantial evidence was presented by the State at trial to support the conclusion that [he] intentionally and knowingly engaged in conduct that was in violation of the TRO.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the case law and statutes relevant to the arguments advanced and the issues raised by the parties, we disagree with Tangelder and conclude that there is substantial evidence in the record to support Tangelder's conviction. To convict Tangelder of violating HRS § 586-4(e), the State was required to prove that Tangelder
(1) knew that a TRO has been granted against him (attendant circumstances), and (2) "knowingly or intentionally" violated the TRO (conduct).
State v. Dilliner, 114 Hawai`i 518, 529, 164 P.3d 776, 787 (App. 2007) (brackets omitted).
The complaining witness (CW) testified that: she had lived with Tangelder "briefly" and been in a relationship with him "[o]n and off for over a year"; she ended the relationship with Tangelder in February 2007 and moved into the home of her ex-husband; she obtained a TRO against Tangelder, which was in effect on February 16, 2007; on February 16, 2007, she saw Tangelder drive his car on the street fronting her ex-husband's residence, "[p]ause in front of the driveway, and then pull out"; she then closed the front door of the residence and "the phone started ringing"; and she recognized the caller's voice as belonging to Tangelder and the phone number of the caller as that of one of a "series of pay phones that [Tangelder] likes to call [her] from." CW explained that she then called the police and upon their arrival, she showed them a copy of the TRO, her cell phone, and the pay phone numbers logged on the cell phone. She also let the police hear a couple of messages on her phone in which the caller had identified himself as "Edward Norton." According to CW, while she was telling a police officer "the story of Edward Norton . . . the phone rang, and [she] answered it." CW stated that the call "was from one of the pay phone numbers that [she had shown] the police officer" and "the police officer took the phone from [her and] the caller identified himself as Edward Norton." CW testified that the officer then "answered the phone in a very local voice" and she overheard the caller "yell who the hell are you or something like that[.]"
Officer Eric Caspillo testified that he served the TRO on Tangelder on February 7, 2007 at about 7 p.m. The TRO, which was introduced into evidence, prohibited Tangelder from contacting, writing, telephoning, or otherwise electronically contacting CW by recorded message, pager, etc.
Tangelder himself testified that he was aware of the TRO and lived in Princeville on February 16, 2007. Tangelder and his mother both testified that Tangelder was at her house all day and night on February 16, 2007 to celebrate his birthday; however, the family court did not credit their testimony. The family court did credit CW's testimony.
Therefore, there was substantial evidence in the record that Tangelder knew that a TRO had been granted against him and that he knowingly or intentionally violated the TRO by contacting CW. State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007). See also State v. Alpaca, 96 Hawai`i 17, 23, 25 P.3d 792, 798 (2001).
Accordingly, we affirm the Judgment filed on September 18, 2007 in the Family Court of the Fifth Circuit.
NOTES
[1] The Honorable Calvin K. Murashige presided.